**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————— :
                                                :
DAISY MONTICH, on behalf of          :
herself and all others similarly situated, :
                                                :
    Plaintiffs                         :
                                                :          Civil Action No. 11-02725
      v.                              :
                                                :                **OPINION**
MIELE USA, INC.,                        :
                                                :
    Defendant                        :
                                                :
—————————————————— :

<u>**WOLFSON, United States District Judge**</u>:

      Presently before the Court is Defendant Miele USA, Inc.'s ("Miele" or "Defendant")

motion to dismiss Plaintiff Daisy Montich's ("Montich" or "Plaintiff") Complaint for failure to

state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff filed her four-count Complaint on

behalf of herself and a putative class alleging that Defendant (1) violated the New Jersey

Consumer Fraud Act, N.J.S.A. § 56:8-1 et seq. ("NJCFA") (Count I); (2) violated similar

Consumer Protection Acts of other states (including California) (Count II); (3) breached an

implied warranty of merchantability (Count III); and (4) was unjustly enriched (Count IV).

Plaintiff's claims stem from her purchase and use of a front-loading washing machine

manufactured by Miele.  Specifically, Plaintiff alleges that mold or mildew began to develop

after about a year of normal use of the washing machine at her home in Torrence, California.

1

Defendant argues that Plaintiff raises no viable claims.  For the reasons set forth below, Defendant's motion to dimiss is GRANTED-IN-PART and DENIED-IN-PART: Count I of the Complaint is DISMISSED WITH PREJUDICE, Count II is DISMISSED WITHOUT PREJUDICE, and Defendant's Motion is DENIED with respect to COUNTS III and IV.

## I. BACKGROUND

In addressing Defendant's Motion to Dismiss, this Court must accept Plaintiff's allegations contained in the Complaint as true.  See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003); Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996).  Thus, the facts recited below are taken from the Complaint and do not represent this Court's factual findings.

In July 2007, Montich, a citizen of California, purchased a Miele front-loading washing machine from a Ferguson Enterprises, Inc. retail store in California.  Compl. ¶¶ 6, 17.  Miele is headquartered in Princeton, New Jersey.  Id. ¶ 7.  Plaintiff paid $1,799 and took delivery of the Miele washing machine on September 25, 2007, at her residence in Torrence, California.  Id. ¶¶ 6, 17.  In the summer of 2008, after normal home use, she noticed an odor of mildew or mold from both the machine and the laundered clothes.  Id. ¶¶ 6, 18.  Montich contacted Miele about the smell. Id. ¶ 20.  In response, Miele sent her a "Descaler" to run during an empty cycle to remedy the odor.  Id.  Despite using the Descaler, her machine continued to smell of mildew or mold.  Id.

Plaintiff's claims are brought on behalf of herself and two defined classes.  Class A is defined as "All persons and entities who own a Miele Washing Machine."  Compl. ¶ 21.  Class B is a subset of Class A and is defined as "All persons and entities in New Jersey, Arizona,

California, Illinois, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New York, Ohio, Texas, Wisconsin, and Washington who own a Miele Washington Machine." Id.  Plaintiff's NJCFA and breach of an implied warranty claims are brought on behalf of Class A, while her other consumer fraud act and unjust enrichment claims are brought on behalf of Class B.

In the instant matter, Defendant moves to dismiss the claims on the bases that (1) Plaintiff cannot avail herself of the NJCFA because California law applies to Plaintiff's consumer fraud claims;[1] (2) Plaintiff does not have standing to bring a claim under California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") because she faild to plead actual reliance; (3) Plaintiff fails to state a claim for a breach of implied warranty under California law because she did not buy the machine directly from Defendant and therefore lacks privity;[2] and (4) Plaintiff fails to state a claim for unjust enrichment under New Jersey law because Defendant was not directly enriched by Plaintiff's purchase.  Lastly, Defendant argues that Plaintiff has failed to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) for her claims based on fraud.

As an initial matter, Plaintiff cites to several federal court opinions involving other motions to dismiss in similar cases alleging moldy front-loading washing machines and argues that Defendant's motion in general "treads well-trodden ground" and ignores "spot on authority." Pl. Opp'n 1-3.  The Court has considered these decisions and does not find them to be analogous

---

[1]Defendant also argues that even if Plaintiff can bring a claim under the NJCFA, she has failed to plead ascertainable loss.

[2]Alternatively, Defendant argues that even if New Jersey law does apply, that Plaintiff's claims are subsumed by the New Jersey Product Liability Act and therefore must fail because Plaintiff does not allege any connection between Miele's conduct and any injury that Plaintiff suffered.

3

to the facts and legal issues before it today.  Other than Harper v. LG Elecs. United States, Inc.,
595 F. Supp. 2d 486, 490 (D.N.J. 2009), which is discussed at length, infra, none of the cases
cited by Plaintiff involve a potential conflict of law between New Jersey and California.  And, in
all other cases beside Harper, the courts dismissed some of the same causes of action that
Plaintiff now brings.  See Butler v. Sears, Roebuck & Co., No. 06-7023, 2009 U.S. Dist. LEXIS
102413, at *14, *18 (N.D. Ill. Nov. 4, 2009); In re Whirlpool Corp. Front-Loading Washer
Prods. Liab. Litig., 684 F. Supp. 2d 942, 956, 960 (N.D. Ohio 2009); Tait v. BSH Home
Appliances Corp., No. 10-711, 2011 U.S. Dist. LEXIS 103584, at *12 (C.D. Cal. Aug. 31, 2011).

## II.  STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that a complaint "shall contain (1) a short
and plain statement of the grounds upon which the court's jurisdiction depends. . . (2) a short and
plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for
judgment for the relief the pleader seeks."  Fed. R. Civ. P. 8(a).  The purpose of a complaint is
"to inform the opposing party and the court of the nature of the claims and defenses being
asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded."
CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1182 (3d
ed. 2004).  Furthermore, Plaintiff's fraud-based claims must be pled with particularity per
Federal Rule of Civil Procedure 9(b).  To meet this heightened pleading standard, a plaintiff
"must state the circumstances of the alleged fraud with sufficient particularity to place the
defendant on notice of the precise misconduct with which it is charged." Frederico v. Home
Depot, 507 F.3d 188, 200 (3d Cir. 2007) (internal citations and quotations omitted).

When reviewing a motion to dismiss, courts "accept all factual allegations as true,

4

construe the complaint in the light most favorable to the plaintiff, and determine whether, under

any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v.

County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal citations and quotations

omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court

clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in

Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

in support of his claim which would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at

45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right

to relief above the speculative level." Id. at 555.  As the Third Circuit has stated, "[t]he Supreme

Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a

claim requires a complaint with enough factual matter (taken as true) to suggest' the required

element.  This 'does not impose a probability requirement at the pleading stage,' but instead

'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at

556).

        In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court

recently explained the following principles.  "First, the tenet that a court must accept as true all of

the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal,

556 U.S. 662, 129 S.Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11

(3d Cir. 2009). "Second, only a complaint that states a plausible claim for relief survives a

motion to dismiss." Ashcroft, 129 S. Ct. at 1950. The plausibility standard requires that "the

plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (quoting Twombly, 550 U.S. at 556). Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211. In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

### A. Choice of Law Principles

Plaintiff's claims are all based on state law. Therefore, the Court must decide which state law to apply to her claims – New Jersey or California. A federal court sitting in diversity jurisdiction must apply the forum state's choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Gen. Star Nat'l Ins. Co. v. Liberty Mutual Ins. Co., 960 F.2d 377, 379 (3d Cir. 1992). The New Jersey Supreme Court has recently adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. P.V. v. Camp Jaycee, 197 N.J. 132, 142-43 (2008). This test consists of two prongs and is applied for each separate cause of action.

The first prong of the analysis requires a court to examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. Camp Jaycee, 197 N.J. at 143-44 (citing Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)). If there is no actual

conflict, the analysis ends and the court applies the law of the forum state. See In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir.1997); Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 621 (2007). But if a conflict does exist, the court must then determine which jurisdiction has the "most significant relationship" to the claim. Camp Jaycee, 197 N.J. at 136.

Defendant argues that California law applies to Plaintiff's consumer fraud and breach of implied warranty claims.  Plaintiff, however, relying on Harper v. LG Elecs. United States, Inc. for support, contends that a choice of law determination is not yet ripe for decision because, according to Plaintiff, it requires a fact intensive inquiry that is premature at the motion to dismiss stage.  In Harper, the court ruled that the factual record before it was not sufficiently developed to rule on the choice-of-law arguments raised by LG Electronic's motion to dismiss. The Harper court was clear, however, that it was not laying down a blanket rule.  See Harper, 595 F. Supp. 2d at 491 ("Some choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss.").  Rather, the decision about whether a choice-of-law issue is ripe or premature should be made on a case-by-case basis depending on the facts presented.  Indeed, courts, including the Third Circuit, have decided choice-of-law issues on a motion to dismiss when the necessary facts are pled in the complaint.  Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x 250, 255 (3d Cir. 2010) (rejecting Plaintiff's argument that it was premature to make a choice-of-law determination at the motion to dismiss stage); Warma Witter Kreisler, Inc. v. Samsung Electronics America, Inc., No. 08-5380, 2010 U.S. Dist. LEXIS 34584, at *10-11 (D.N.J. Apr. 8, 2010);  Knox v. Samsung Electronics America, Inc., No. 08-4308, 2009 U.S. Dist. LEXIS 53685, at *11-12 (D.N.J. June 25, 2009).

District courts in this Circuit have interpreted Harper to require a threshold inquiry into

7

whether a choice-of law-issue needs a fuller factual record.  See Snyder v. Farnam Cos., 792 F.

Supp. 2d 712, 718 (D.N.J. 2011) ("In order to decide whether choice of law analysis is

appropriate at the motion to dismiss stage in this particular case, the Court will follow the

guidance provided in Harper, and determine whether the choice of law issues 'require a full

factual record' or not."); Arlandson v. Hartz Mt. Corp., 792 F. Supp. 2d 691, 702 (D.N.J. 2011)

(stating same and applying the law of the Plaintiffs' home state to claims for breach of implied

warranty, violation of the NJCFA, and unjust enrichment). Because the "most significant

relationship" test must be applied issue-by-issue, this Court will undertake a separate analysis for

each of Plaintiff's claims.  Should the choice-of-law analysis for that issue require a fuller factual

record, the Court will defer its decision until such record is available.  Otherwise, the decision

may be made now.

### B.  Consumer Protection Claims

#### 1. NJCFA

To determine whether a fuller factual record is required, the Court must first know what

facts are necessary for each specific determination.  The first prong – whether a conflict exists

between the laws of the two jurisdictions – demands a purely legal analysis and requires no

factual record.  Defendant argues that there is a conflict between the consumer protection laws of

New Jersey and California because New Jersey does not require a plaintiff to plead and prove

reliance whereas California does.  Plaintiff does not dispute this.  Instead, Plaintiff argues that

any choice-of-law determination is premature and even if California law does apply, Plaintiff has

sufficiently established reliance.

To state a *prima facie* case under the NJCFA, a plaintiff must demonstrate three

elements: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009). A party need not plead reliance under the NJCFA. "Our CFA does not require proof that a consumer has actually relied on a prohibited act in order to recover." Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 391 (2007).

California's equivalent of the NJCFA is referred to as the unfair competition law ("UCL") and false advertising law ("FAL"). "Unfair competition" is defined under the UCL as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; see also Lippitt v. Raymond James Fin. Servs., 340 F.3d 1033, 1043 (9th Cir. 2003) ("To bring a UCL claim, a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'"). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." Cel-Tech Commc'ns, Inc. v. LA. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (internal quotations and citation omitted). The FAL prohibits "any statement . . .which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" made in connection with the sale of goods or services. Cal. Bus. & Prof. Code § 17500.

The broad scope of these sections was limited when California voters approved Proposition 64, which added standing requirements to both the UCL and FAL. Now a plaintiff must show she is someone "who has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code §§ 17204, 17535. That language has

9

been interpreted as adding the elements of actual reliance and injury in fact to UCL and FAL

claims.  Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 321-22 (Cal. 2011) (affirming the

actual reliance and injury in fact requirements under both the UCL and the FAL); In re Tobacco

II Cases, 46 Cal. 4th 298, 328 (Cal. 2009) ("Accordingly, we conclude that a plaintiff must plead

and prove actual reliance to satisfy the standing requirement of section 17204...").  Because the

NJCFA does not require a showing of reliance whereas California's consumer protection laws

do, the Court finds there is a conflict of law between the two jurisdictions.

Turning to the second prong of the analysis, I must determine which state has the "most

significant relationship" to Plaintiff's unfair competition claims.  To do so, I must weigh the

factors set forth in the Restatement section that corresponds to Plaintiff's cause of action. See,

e.g., Nafar v. Hollywood Tanning Sys., 339 F. App'x 216, 220 (3d Cir. 2009) (citing Agostino v.

Quest Diagnostic, Inc., 256 F.R.D. 437, 463 (D.N.J. 2009)); Camp Jaycee, 197 N.J. at 143-44.

Because the Plaintiff's unfair competition claims sound in fraud and misrepresentation, the Court

applies the conflict of laws analysis of Section 148, which applies to fraud based claims.

Restatement (Second) of Conflict of Laws § 148 (1971); see also, e.g., Agostino, 256 F.R.D. at

462; see also Nafar, 339 F. App'x at 221.

Section 148 provides:

(1) When the plaintiff has suffered pecuniary harm on account of his reliance on
the defendant's false representations and when the plaintiff's action in reliance
took place in the state where the false representations were made and received, the
local law of this state determines the rights and liabilities of the parties unless,
with respect to the particular issue, some other state has a more significant
relationship under the principles stated in § 6 to the occurrence and the parties, in
which event the local law of the other state will be applied.

(2) When the plaintiff's action in reliance took place in whole or in part in a state

other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

>  (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
>  (b) the place where the plaintiff received the representations,
>
>  (c) the place where the defendant made the representations,
>
>  (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
>  (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
>  (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971).  Additionally, courts look to the more general factors set forth in § 6 of the Restatement as interpreted by the New Jersey Supreme Court in Camp Jaycee: (1) interests of interstate comity, (2) interests of the parties, (3) interests underlying the field of law, (4) interests of judicial administration, and (5) competing interests of the states. Camp Jaycee, 197 N.J. at 147 (citing to Restatement § 6).

Restatement § 148 distinguishes between (1) instances where the alleged misrepresentations were made and received and a plaintiff's reliance all occurred in the same jurisdiction and (2) instances where the misrepresentations and reliance were in different jurisdictions.  That latter circumstance applies here.  Because Plaintiff lives in California and bought the washing machine from a store in California, her reliance on any misrepresentations, if

11

any, necessarily would have been in California.[3]  Plaintiff points out, however, that the alleged

misrepresentations originated, or were made, in New Jersey because Miele is headquartered in

New Jersey.  Defendant does not argue to the contrary for purposes of this motion.  Therefore, I

will analyze the most significant relationship test under the enumerated factors of the

Restatement, § 148(2).

        Plaintiff's Complaint provides all necessary facts for the Restatement analysis.  Indeed,

Plaintiff's conclusory position that the Court cannot engage in a choice-of-law analysis is belied

by her inability to indicate what other facts are necessary to decide this issue.  And the precedent

she relies on, Harper, is factually distinguishable.  Harper involved 24 named plaintiffs, from

thirteen different states, each alleging violations stemming from their individual transactions or

set of transactions and individual interactions with the LG Electronics.  On the other hand, in

instances such as in Cooper, Warma Witter, and Knox, where only one plaintiff alleged

violations stemming from one transaction in one foreign jurisdiction, courts in this Circuit have

ruled on choice-of-law issues at the motion to dismiss stage.  The present facts are more in line

with this second category of cases.  Here there is one named plaintiff[4] from one state and all

relevant facts about that single transaction are pled in Plaintiff's Complaint – namely that she

---

[3]As I discuss below in conjunction with Plaintiff's California consumer fraud claim, the Plaintiff
has not pled that she was aware of, read, or relied on any specific misrepresentations that Miele
made nor has she delineated whether she relied on statements provided with the product itself,
print advertisement, or some other type of statement.  But for purposes of this analysis, it is
immaterial, because if there were any such representations she would have received them in
California, thereby invoking subsection 2 of § 148.

[4]The Court is not considering class allegations on this motion.  See Rolo v. City Investing Co.
Liquidating Trust, 155 F.3d 644, 659 (3d Cir. 1998); see also infra notes 6, 8.

purchased, took delivery, and used the washing machine in California and that Miele's alleged

misrepresentations or omissions were made at its headquarters in New Jersey.[5]  Therefore, the

Plaintiff has pled sufficient facts from which this Court can determine which law should apply to

Plaintiff's consumer fraud claims.

Turning to the six factors listed in § 148(2), the Court notes that because Plaintiff would

have received Defendant's alleged misrepresentations in California, three of the factors – (a)

place of reliance, (b) place where plaintiff received the representation, and (e) the place where a

tangible thing which is the subject of the transaction is located – weigh in favor of applying

California law.  The fourth factor – the domicile, residence, and place of business or

incorporation of the parties – does not favor any particular jurisdiction.  Plaintiff is a citizen of

California and Defendant is headquartered in New Jersey.  The sixth factor, subsection (f) of

Restatement § 148(2), is inapplicable since there is no contract performance required by Plaintiff.

Plaintiff's attempt to avail itself of New Jersey law turns then on the remaining factor –

the place where Defendant made the misrepresentations.  Plaintiff argues that Miele's contacts

with New Jersey are numerous, and therefore, New Jersey law should apply.  Pl. Opp. at 5-6.

Plaintiff's position is founded on the following: (1) Miele is headquartered in New Jersey,

manufactures the washing machine at issue in New Jersey, and sells a number of them in New

Jersey; (2) Miele's marketing emanated from its headquarters in New Jersey; (3) any express

warranty was prepared by Miele at its headquarters in New Jersey; (4) the washing machine at

---

[5] Defendants argue that Harper is also distinguishable because it was decided before the New
Jersey Supreme Court issued its decision in Camp Jaycee, which adopted the "most significant
relationship" test.  I need not address this issue as my determination rests on other grounds.

issue was designed at its headquarters in New Jersey; (5) Miele received complaints at its headquarters in New Jersey; (6) any decision not to disclose the alleged defect was made at Miele's headquarters in New Jersey; and (7) Miele received Plaintiff's complaint at, and responded to it from, its headquarters in New Jersey.  These reasons all flow from the fact that Miele is headquartered in New Jersey.  Even taking these allegations as true, they are insufficient to confer New Jersey with a more significant interest in Plaintiff's consumer fraud claim than California, where the transaction occurred and the harm arose.  A majority of courts in this District have held that the mere fact that a company is headquartered in New Jersey or "that unlawful conduct emanated from New Jersey" will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship under Restatement § 148(2).  Maniscalco v. Brother Int'l Corp., 793 F. Supp. 2d 696, 708 (D.N.J. 2011); Nikolin v. Samsung Elecs. Am., Inc., No. 10-1456, 2010 U.S. Dist. LEXIS 110942, at *11-14 (D.N.J. Oct. 18, 2010) (collecting cases); see also Cooper v. Samsung Electronics America, Inc., 374 Fed. App'x at 255.  For example, in Warma Witter Kreisler, the court held that an "allegation that Samsung designed the product's operation in New Jersey does not outweigh the other, more significant, ties to Illinois."  2010 U.S. Dist. LEXIS 34584, at *11.  Similarly, in Knox, the court applied Georgia's consumer fraud law where "the consumer contacts . . . all occurred in Georgia" and noted that despite Samsung's headquarters and the alleged wrongdoing occurring in New Jersey, "it is not clear . . .that New Jersey intended out-of-state consumers to engage in end runs around local law in order to avail themselves of collective and class remedies that those states deny."  2009 U.S. Dist. LEXIS 53685 at *10-11.  And in Cooper, the court held that the "[plaintiff], who purchased the television in his home state

of Arizona, is not entitled to sue under the New Jersey consumer fraud statute." 374 Fed. App'x. at 255. The court reasoned that: "[t]he transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters. Cooper's claim bears the most significant relationship with Arizona, the state in which the television was marketed, purchased, and used." Id.

Plaintiff relies on In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46 (D.N.J. 2009) as support for applying New Jersey law. There, the court found New Jersey law applied because all of the actions and misrepresentations were "planned and implemented" in New Jersey. Id. at 66. But the Mercedes decision has been criticized by other courts in this Circuit. Maloney v. Microsoft Corp., No. 09-2047, 2011 U.S. Dist. LEXIS 134841, at *28 (D.N.J. Nov. 21, 2011) ("This Court is similarly unsatisfied with the justifications provided in the Mercedes Benz decision."); Agostino v. Quest Diagnostics, Inc., No. 04-4362, 2010 U.S. Dist. LEXIS 135310, *28 (D.N.J. Dec. 22, 2010) ("Parting ways, however, with Judge Debevoise's assessment in Mercedes, this Court does not consider that New Jersey's interest in deterring fraudulent conduct perpetrated by domestic companies necessarily trumps the interest of the victim's home state."). Significantly, this Court has previously distinguished Mercedes under circumstances similar to those presented here. See Maniscalco v. Brother Int'l Corp., 793 F. Supp. 2d 696, 707 (D.N.J. 2011) ("Moreover, even if I were to find that BIC had made a decision to conceal in New Jersey, such a finding would not alter my determination that California and South Carolina have the most significant relationship to Plaintiffs' fraud claims; indeed, as discussed above, a majority of the courts in this district have determined that unlawful conduct emanating from New Jersey does not necessarily 'supersede the numerous contacts' a plaintiff

15

had with his home state.").    Plaintiff here has presented no persuasive authority or rationale to convince this Court to depart from its previous approach.  Rather, under these facts, Miele being headquartered in New Jersey and making the alleged misrepresentations in New Jersey are not enough, standing alone, to outweigh the numerous contacts Plaintiff's unfair competition claims have with California.  Here Plaintiff purchased the washing machine from a store in California, took delivery of the machine in California, used the machine at her home in California, and allegedly suffered injury in California.  Based on these facts and the weight of the precedent in this Circuit, the Court finds that California has the most significant relationship with the litigation regarding Plaintiff's consumer fraud claim.

The Court's determination is further bolstered by the factors listed in § 6 of the Restatement.  See, generally, Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 463 (D.N.J. 2009).  The interests of interstate comity favor applying the law of a state where there injured party resides.  Fink v. Ricoh Corp., 365 N.J. Super. 520, 585 (N.J. Super. Ct. Law Div. 2003) (stating this factor "clearly require[s] application of the law of any potential claimant's state of residence because application of any other state's law would frustrate the domiciliary state's legislative policies...").  Second, the interests of the parties looks to what law the parties reasonably expected would apply in light of their transaction.  See Fu v. Fu, 160 N.J. 108, 123 (1999); see also Restatement § 6, comment g ("Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state.").  Measured as of the time the alleged conduct occurred, this factor would favor California's interest.  That is where the transaction occurred; that is where the washing machine was purchased, delivered, and used.  It is

16

more reasonable therefore that the parties would expect California law to apply rather than New Jersey law.  Third, because California has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in regulating the scope of recovery for its citizens under its own laws, the interests underlying consumer fraud favor California.  Fourth, neither party has made a showing that judicial administration favors either jurisdiction, and even if it favored New Jersey, this factor adds little to the overall analysis because the interests of judicial administration must yield to the interests implicated by the remaining factors.  See Agostino, 256 F.R.D. at 463.  Finally, the competing interests of the states further favor California.  "[E]very state has an interest in having its law applied to its resident claimants."  Mazza v. Am. Honda Motor Co., 666 F.3d 581, 591-92 (9th Cir. 2012); see also State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 422 (2003) ("[E]ach State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders.").  Thus, the Court finds that California has the most significant relationship with Plaintiff's consumer fraud claims.[6]

Because New Jersey law does not apply to Plaintiff's consumer fraud claim, the NJCFA

---

[6]The Court notes that Plaintiff's putative class is directed to class members in numerous different states.  While the issue of class certification is not before me, I note a recent decision by the Ninth Circuit Court of Appeals that reversed a similar class certification because of a lack of commonality of consumer fraud claims.  The appeals court held that because the law of each plaintiff's home state must apply to the consumer fraud claim there could be no commonality of legal questions when the underlying consumer fraud claims had materially different requirements.  Mazza v. Am. Honda Motor Co., 666 F.3d 581, 596 (9th Cir. 2012) ("Because the law of multiple jurisdictions applies here to any nationwide class...variances in state law overwhelm common issues and preclude predominance for a single nationwide class.").  Whether the jurisprudence of the Third Circuit would compel a similar holding is a question for a later day.

claim, Count I of Plaintiff's Complaint is DISMISSED WITH PREJUDICE.[7]

### 2. California Consumer Protection Law

Plaintiff's second cause of action arises under California's consumer protection law.[8] The parties have focused on California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL").

Plaintiff's California consumer protection claims sound in fraud and must meet the heightened pleading requirements of Rule 9(b).  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL").  Importantly, the Third Circuit has advised that, at a minimum, a plaintiff must support allegations of fraud with all the essential factual background that would accompany "'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue."  In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276-77 (3d Cir. 2006) (citations omitted) abrogated on other grounds by Tellabs, Inc. v. Makor Issues & Rights, L.T.D., 551 U.S. 308, 322-23 (2007).  A complaint must do more than assert generalized facts, it must allege facts specific to the plaintiff.  Rolo v.

---

[7]In light of the dismissal of Plaintiff's NJCFA cause of action, I need not reach Defendant's alternative arguments about whether Plaintiff properly pled "ascertainable loss" under the NJCFA.  Nor must I address whether Plaintiff's NJCFA claim is subsumed by the NJPLA.

[8] Plaintiff's second cause of action is styled as "Violation of Similar Consumer Protection Acts"and references numerous other state consumer protection laws apparently in anticipation of the class being certified.  Compl., ¶ 43 n. 1.  The parties make no arguments about these other statutes, other than California's, and because the Court must address the issues as they stand between the named Plaintiff and Defendant without reference to the class until it is certified, I will not address these statutes either.  See Rolo, 155 F.3d at 659; see also Kalow & Springnut, LLP v. Commence Corp., No. 07-3442, 2009 U.S. Dist. LEXIS 320, at *13-14 (D.N.J. Jan. 5, 2009).

City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir. 1998) abrogated on other grounds by Rotella v. Wood, 528 U.S. 549 (2000) (where the complaint failed to allege "what actually happened to either" of the plaintiffs, the complaint did not plead "fraud with the specificity required by Rule 9(b)").  Nevertheless, this heightened standard is somewhat relaxed in a case based on a fraudulent omission.  Falk v. General Motors Corp., 496 F. Supp. 2d 1088, 1098-99 (N.D.Cal. 2007).

To bring an action under California's UCL and FAL, Plaintiff must have standing; Plaintiff must plead that she actually relied on Defendant's statements or omissions and suffered injury in fact.  Plaintiff alleges Miele failed to disclose the alleged odor causing design defect; thus, this is a fraudulent omission case. To prove reliance in a fraudulent omission case, Plaintiff must establish that "had the omitted information been disclosed, [she] would have been aware of it and behaved differently."  Mirkin v. Wasserman, 5 Cal. 4th 1082, 1093 (Cal. Ct. App. 1993). A presumption of reliance "arises wherever there is a showing that a misrepresentation was material."  In re Tobacco II, 46 Cal. 4th at 327 (internal quotations omitted).  "A misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence." Kwikset Corp. v. Superior Court, 51 Cal. 4th at 322 (internal citations and quotations omitted).

In In re Toyota Motor Corp., plaintiffs brought a claim under California consumer protection law based on the alleged fraudulent omission that certain Toyota vehicles "could accelerate suddenly and dangerously out of the driver's control."  In re Toyota Motor Corp., 790 F. Supp. 2d 1152, 1169 (C.D. Cal. 2011).  Toyota moved to dismiss arguing that there was no adequate showing of reliance.  The court denied Toyota's motion because plaintiffs sufficiently

alleged (1) they saw the defendant's advertisements and (2) they would have "made a different purchasing decision" if the omission had been disclosed.  Id. at 1168-1169 ("Because Plaintiffs allege that they would have made a different purchasing decision but for Toyota's misrepresentations, Plaintiffs satisfy the actual reliance requirement under the UCL and FAL."); see also Mirkin, 5 Cal. 4th at 1093 ("[I]t is not logically impossible to prove reliance on an omission. One need only prove that, had the omitted information been disclosed, one would have been aware of it and behaved differently.").

Dismissal is appropriate, however, when plaintiff's complaint is devoid of allegations regarding reliance.  In Ehrlich v. BMW of N. Am., the plaintiff brought a claim alleging a significant structural weakness in the windshields of certain BMW Mini Coopers.  Ehrlich v. BMW of N. Am., LLC, 801 F. Supp. 2d 908, 920 (C.D. Cal. 2010).  There, because the plaintiff did not allege that he had reviewed or seen any representations by the defendant and did not allege that he would have behaved differently had he known about the alleged defect, the court dismissed the UCL claim.  Id. (granting leave to amend to cure deficiencies).

Here Plaintiff points to her allegations that "Miele intended that Plaintiff and the Class would rely" on Miele's representations and omissions regarding the alleged mildew odor and that without Miele's disclosures "consumers would not know there is a design flaw."  Compl., ¶¶ 47, 49.[9]  But whether Miele intended Plaintiff to rely or not is irrelevant to whether Plaintiff did in

_____

[9]These paragraphs of Plaintiff's Complaint read in their entirety:

¶ 47: Consumers (such as Plaintiff) were entitled to disclosure of all material facts because Miele Washing Machines contained a design defect that in the course of normal use caused mildew/mold, which would be a material fact in a consumer's decision-making process.  Further, without Miele's disclosure, consumers would not know that there is a design flaw inherent in the

fact so rely.  Plaintiff does not allege (1) that she saw any Miele advertisements or representations regarding its front-loading washing machines such that she would have been aware of any relevant disclosures or omissions or (2) that had she been aware of such disclosures, she would have behaved differently.

Nevertheless, Plaintiff argues that because she has pled materiality, reliance should be presumed.  Pl. Opp., 13; Compl., ¶ 47.  Even if Plaintiff did adequately plead that Miele's alleged omissions were material, nonetheless, basic allegations of reliance must also be pled.  The court in In Re Toyota based its decision not only on the omission's materiality, but also on the fact that plaintiffs "allege[d] that they would have made a different purchasing decision but for Toyota's misrepresentations."  In re Toyota,790 F. Supp. 2d at 1169.  The Toyota court also explained "Plaintiffs are not required to plead that the fraudulent conduct was the only, predominant, or even decisive factor in influencing their conduct, but *they must plead that* it 'played a substantial part, and so had been a substantial factor' in influencing the decision." Id. at 1168 (emphasis added) (quoting Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 976-77 (1997)).  Montich makes no such allegations here.  Similarly, despite the court's finding in Ehrlich v. BMW that the purported omission was material, that court still dismissed plaintiff's consumer protection claims because plaintiff's complaint was "devoid of allegations that Plaintiff would have plausibly been aware of the cracking defect before he purchased his MINI had BMW

---

Machine.

¶ 49: Miele intended that Plaintiff and Class would rely on the deception by purchasing Miele Washing Machines, unaware of the material facts described above.  This conduct constitutes actionable conduct within the meaning of the Consumer Protection Acts.

publicized this information."  <u>Ehrlich</u>, 801 F. Supp. 2d at 918-920.  Again, Montich's Complaint

is similarly devoid of any such allegations.[10]

These deficiencies are even more glaring in light of the heightened pleading standard

required by Rule 9(b).  While a plaintiff in a fraud by omission suit will not be required to

specify the details of an omission as precisely as would a plaintiff asserting a false representation

claim, a plaintiff must still plead the essential elements in some "alternative way."  See, e.g.,

Washington v. Baenziger, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987) ("Where the fraud consists

of omissions on the part of the defendants, the plaintiff may find alternative ways to plead the

particular circumstances of the fraud.").  Without any allegation of actual reliance, Plaintiff's

complaint is lacking "all the essential factual background" necessary to inform the Court of

Plaintiff's fraud claim, including what representations she relied on, if any, or where and how

those representations were made, such that Plaintiff could have learned of the defect had Miele

not omitted it, and whether Plaintiff would have acted differently had she known about the

alleged defect.  Therefore, Count II of Plaintiff's Complaint is DISMISSED WITHOUT

PREJUDICE with leave for Plaintiff to amend in accordance with the above ruling.

### C.  Breach of Implied Warranty

#### 1.  Choice of Law

---

[10] Under California law, a plaintiff must also show that the defendant had a duty to disclose the omitted fact.  Such a duty arises in one of four ways: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." <u>LiMandri v. Judkins</u>, 52 Cal. App. 4th 326, 336 (Cal. Ct. App. 1997).   Since the Parties do not address this issue and in light of Plaintiff's failure to sufficiently plead actual reliance, the Court need not address it at this time.

Next, the Court turns to Plaintiff's claim that Miele breached an implied warranty of merchantability. Defendant argues that Plaintiff's breach of implied warranty claim should be dismissed because (1) California law applies and (2) California law imposes a requirement of privity, which Plaintiff cannot satisfy because she purchased her washer from a retailer ant not from Miele directly. In response, Plaintiff again maintains that any choice-of-law decision is premature at this stage.

First, the Court must apply the "most significant interest" test. If any additional facts are necessary to undertake this analysis, no choice-of-law conclusion can be made at this time. If no other facts are needed, then the Court will choose which jurisdiction's law applies. Defendant argues a conflict of law exists between the two jurisdictions because California maintains a privity requirement for an implied warranty claim while New Jersey does not. Again, this prong is a purely legal inquiry; no further factual record is required.

New Jersey implies a warranty of merchantability in every contract for the sale of goods. See In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig., No. 08-939, 2009 U.S. Dist. LEXIS 82833, at *50 (D.N.J. Sept. 11, 2009) (citing N.J. Stat. Ann. § 12A:2-314)). New Jersey has adopted the Uniform Commercial Code ("UCC") which provides, in pertinent part, "that for goods to be merchantable they must at least: "(a) pass without objection in the trade under the contract description; … (c) [be] fit for the ordinary purposes for which such goods are used; and… (f) conform to the promises or affirmations of fact made on the container or label if any." N.J. Stat. Ann. § 12A:2-314. "In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." In re Toshiba, 2009 U.S. Dist. LEXIS 82833, at *51. New Jersey does

23

not require privity between a plaintiff and defendant for such claims. Spring Motors Dist., Inc. v. Ford Motor Company, 98 N.J. 555, 561 (1985).

California Uniform Commercial Code § 2314 is a near verbatim copy of N.J. Stat. Ann. § 12A:2-314 and both mirror UCC § 2-314.  Nevertheless, California courts note that "[w]hile the nationwide adoption of the Uniform Commercial Code provides this cause of action in virtually all states, it is not applied in the same fashion everywhere.  States have distinct rules concerning whether vertical privity is a prerequisite to recovery.  In California, such privity is required." Osborne v. Subaru of America, Inc., 198 Cal. App. 3d 646, 656 (Cal. Ct. App. 1988) (citing Burr v. Sherwin Williams Co., 42 Cal. 2d 682, 692-696 (1954)).  Therefore, California's application of U.C.C. § 2-314 requires the additional element of privity whereas New Jersey does not. Privity is established when a "buyer and seller stand in privity if they are in adjoining links of the distribution chain.  Thus, an end consumer...who buys from a retailer is not in privity with a manufacturer." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008) (citing Osborne, 198 Cal. App. 3d at 656 n. 6).

This does not dispose of the issue, however, because California extends additional protection for consumers of new retail products under its Song-Beverly Consumer Warranty Act ("Song-Beverly Act"). National R.V., Inc. v. Foreman, 34 Cal. App. 4th 1072, 1077 (Cal. Ct. App. 1995).  The Song-Beverly Act provides in pertinent part: "Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792.  The Act is intended to protect buyers of "consumer goods" purchased in California and defines "consumer goods" as "any new product or part

24

thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables." Cal. Civ. Code § 1791(a).  California courts have explained that the Song-Beverly Act was intended to "provide greater protections and remedies for consumers" than the Commercial Code.  Mexia v. Rinker Boat Co., 174 Cal. App. 4th 1297, 1303 (Cal. Ct. App. 2009).  Indeed, the statute itself makes clear "where the provisions of the Commercial Code conflict with the rights guaranteed to buyers of consumer goods under the provisions of this chapter, the provisions of this chapter shall prevail."  Cal Civ Code § 1790.3; Mexia, 174 Cal. App. 4th at 1304.

One essential difference between California's Commercial Code and its Song-Beverly Act is that the former requires privity whereas the latter does not.  Ehrlich v. BMW of N. Am., LLC, 801 F. Supp. 2d 908, 921 (C.D. Cal. 2010) ("However, the Court agrees with Plaintiff and the weight of authority that the plain language of section 1792 of the Song-Beverly Act does not impose a similar vertical privity requirement."); Gonzalez v. Drew Indus., 750 F. Supp. 2d 1061, 1072 (C.D. Cal. 2007); Jensen v. BMW of N. Am., Inc., 35 Cal. App. 4th 112, 127 (Cal. Ct. App. 1995) (discussing the Song-Beverly Act and stating: "[t]here is no privity requirement").  The plain language of the statute creates an implied warranty between the manufacturer and the buyer: every sale of consumer good "shall be accompanied by the *manufacturer's…implied warranty* that the goods are merchantable."  Cal. Civ. Code § 1792 (emphasis added).  To require vertical privity here would be to eviscerate the plain meaning of the statute as it would preclude liability between buyer and manufacturer in most instances.[11]

_____

[11] Because the Court ultimately finds that privity is not required under California law, I need not reach Plaintiff's alternative arguments that California's privity requirement should not apply

Defendant argues that the Song-Beverly Act is "of no moment" because Plaintiff did not specifically invoke the Act in her complaint.  Def. Reply at 8.  However, even if Plaintiff's claim is made only under California's commercial code, as Defendant argues, the Song-Beverly Act supercedes the code wherever there is a conflict.  Cal Civ Code § 1790.3.  Here Plaintiff has alleged that she was a consumer (Compl. ¶ 44) who purchased a new product in California (Compl., ¶¶ 6, 17), specifically a Miele washing machine.[12]   She has also alleged that Defendant had a duty to provide a product reasonably fit for its general purpose and that Defendant violated that duty.  Compl. ¶¶ 55, 56.  The Song-Beverly Act provides that consumers who purchase new products within the state of California are entitled to an implied warranty of merchantability and may recover if a manufacturer breaches that warranty.  Thus, I am satisfied that for purposes of this choice-of-law analysis, Song-Beverly Act must be considered as compared with New Jersey's law of the implied warranty of merchantability.

Because vertical privity is not necessary for a consumer plaintiff to maintain an action under California's Song-Beverly Act, the Court can discern no conflict between New Jersey's law of the implied warranty of merchantability – as applied to the retail sale of new consumer goods – and California's Song-Beverly Act.  Therefore, the Court will apply New Jersey law to Plaintiff's breach of implied warranty claim.

---

because of a dangerous instrumentality exception or that privity should be implied because of the Plaintiff's direct communications with Miele subsequent to her purchase of the washing machine.

[12]Plaintiff's Complaint does not specifically aver that the Miele washing machine was new.  But considering the alleged facts as a whole, including the $1,799 Plaintiff paid for the machine from a retail establishment, it is reasonable to infer she was not purchasing a second-hand washing machine.

2.  NJPLA

Defendant next argues that if New Jersey law applies to Plaintiff's claim for breach of

implied warranty or her claim of unjust enrichment, such claims are subsumed by New Jersey's

Product Liability Act (NJPLA).  In particular, Defendant claims that Plaintiff's "allegations

sound in product liability and failure to warn."[13]  Def. Motion at 10-11; Reply at 10-11.

Defendant further argues the crux of Plaintiff's damage, if any, is the alleged residual smell of

mold that lingers in Plaintiff's washing machine, laundry room, and on her laundered clothes.

And because this damage was allegedly caused by a common design defect, Defendant argues

that the NJPLA subsumes Plaintiff's claims.  Plaintiff eschews this analysis by arguing that

Defendant is deliberately ignoring Plaintiff's explicit allegations.  Rather than being harmed by

the odor in her clothes or laundry room, Plaintiff argues the alleged damage is to the machine

itself because the machine contains a design defect that results in the accumulation of mold.

Thus, according to Plaintiff, her cause of action falls outside the scope of the NJPLA.

The New Jersey  Products Liability Act, N.J.S.A. 2A:58C-1, *et seq.*, was enacted "to limit

the expansion of products-liability law" and "to limit the liability of manufacturers so as to

balance[] the interests of the public and the individual with a view towards economic reality."

Zaza v. Marquess & Nell, Inc., 144 N.J. 34, 47-48 (1996) (quotations and citations omitted). The

NJPLA, therefore, "established the sole method to prosecute a product liability action[,]" and

after its enactment, "only a single product liability action remains."  Tirrell v. Navistar Int'l, Inc.,

248 N.J. Super. 390, 398-99 (N.J. Super. Ct. App. Div. 1991).  In that regard, the Third Circuit

---

[13]Conversely, Defendant also states that Plaintiff's claims sound in fraud and contract liability.
Def. Motion at 5, 9, 17.

has explained that the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." Repola v. Morbark Indus., Inc., 934 F.2d 483, 492 (3d Cir. 1991). Indeed, "the NJPLA generally subsumes common law product liability claims, thus establishing itself as the sole basis of relief under New Jersey law available to consumers injured by a defective product." Id.; see In re Lead Paint Litig., 191 N.J. 405, 436 (2007). The question then is whether Plaintiff's claims fall within the purview of the NJPLA.

Courts have found that the NJPLA subsumes common law and statutory fraud claims so long as the harm alleged *was caused by a product*. See Sinclair v. Merck & Co., Inc., 195 N.J. 51, 66 (2008) ("[D]espite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product."); Brown v. Philip Morris, Inc., 228 F. Supp. 2d 506, 517 (D.N.J. 2002) (fraud claim preempted by the NJPLA when defendant's alleged misrepresentations resulted in "harm caused by a product"); McDarby v. Merck & Co., 401 N.J. Super. 10, 95-96 (N.J. Super. Ct. App. Div. 2008) (statutory consumer fraud claim subsumed by the NJPLA because "the gravamen of [the] claim was that Merk marketed Vioxx fully aware of its cardiovascular risk [and] made misrepresentations[] and . . . omis[ssions]" in connection with its marketing).

Specifically excluded from the NJPLA, however, are causes of action alleging damage to the product at issue. Under the NJPLA, " '[h]arm' means (a) physical damage to property, other than to the product itself...." See N.J. Stat. Ann. § 2A:58C-1b(2) (emphasis added); see also Estate of Knoster v. Ford Motor Co., No. 01-3168, 2008 U.S. Dist. LEXIS 103342, at *14 n.4 (D.N.J. Dec. 22, 2008) (holding that "economic damages for destruction of the product are not recoverable under the PLA"). Defendant cites to Sinclair and similar cases to argue that the

NJPLA applies because Plaintiff's alleged harm was caused by her washing machine.  Plaintiff

argues such cases are inapposite and cites to Estate of Edward W. Knoster among others to argue

her claims fall outside the purview of the NJPLA because her harm was to the washing machine

itself.  The question the Court must answer then is what harm is Plaintiff actually alleging – is it

harm caused by the washing machine or is the alleged harm the malfunction of the washing

machine itself.[14]  The former would fall within the scope of the NJPLA and the latter would not.

Plaintiff's generic damage allegations provide few specifics on how she was harmed.[15]

Nevertheless, these allegations reference the purchase of her machine and must be read in light of

the underlying factual allegations: she spent $1,799 for the Miele washing machine (Compl. ¶

17), her Miele washing machine now smells of mildew or mold (Compl. ¶ 18), and that some of

the clothes she washed in the Miele machine have a similar odor (Compl. ¶ 18).  In essence, she

---

[14]I recognize there is another line of cases where courts hold that the lost value of the product itself does not preclude the claim being subsumed by the NJPLA, including my own decision in Kury v. Abbott Labs., Inc., No. 11-803, 2012 U.S. Dist. LEXIS 4862, *11-12 (D.N.J. Jan. 17, 2012).  In those cases, however, the lost value of the product was tangential to the other alleged harms, which predominated the claims and fell squarely within the NJPLA.  See id. (holding NJPLA subsumed cause of action when theory of recovery was based on harm from ingesting harmful powder formula); Fellner v. Tri-Union Seafoods, L.L.C., No. 06-0688, 2010 U.S. Dist. LEXIS 36195, at *15 (D.N.J. Apr. 13, 2010) (finding that lost value, claimed in addition to personal injury damages, did not change the fact "that this is, in essence, a product liabilities claim"); O'Donnell v. Kraft Foods, Inc., No. 09-4448, 2010 U.S. Dist. LEXIS 26023, at *8-9 (D.N.J. Mar. 18, 2010) (finding plaintiffs' claim of lost value from purchasing the hot dogs was preempted by NJPLA, because those products' lost value resulted in a risk of cancer that plaintiff alleged arises from consumption of [the] product).  Here the entirety of the alleged damage was solely to the product itself and therefore this line of cases does not apply.

[15]For example, Plaintiff's causes of action each include a similar general allegation of damage.  Compl. ¶¶ 41, 53, 58 ("As a result of the non-merchantability of the Miele Washing Machines described herein, Plaintiff and other members of the Class sustained a loss or damages."), 60 ("Miele received and retained a benefit conferred by Plaintiff and Class Members at their expense through the purchase of a Miele Washing Machines."), 64.

paid a substantial sum for a machine she can no longer use.  Plaintiff's briefing echos this.  There

she claims her harm is the "accumulation of mold inside the Miele [washing machine] and the

resulting odor."  Pl. Opp. at 8.  I read the complaint as only alleging that Plaintiff's damages, if

any, flow from the price she paid for the Miele washing machine and the fact that she cannot now

use her washing machine for its particular purpose or that it requires repair.  She does not allege

any harmful health effects, personal injury, or damage to other property.[16]  Plaintiff's damage is

to the product itself and therefore falls outside the ambit of the NJPLA.  To the extent that

Plaintiff's Complaint can be read to assert that she was harmed or her other property was harmed

by the washing machine, then such claims would be subsumed under the NJPLA and barred.

Based upon the Court's limited reading of the Complaint, the NJPLA does not subsume

Plaintiff's causes of action.

### 3.  Plaintiff's Implied Breach of Warranty Claim

Having resolved these issues, the Court now addresses whether Plaintiff has properly

stated a claim that Miele breached an implied warranty of merchantability under New Jersey law.

Defendant offers no further arguments on this point.

"'Merchantability' requires that a product conform to its ordinary and intended use."

Hughes v. Panasonic,  No. 10-846, 2011 U.S. Dist. LEXIS 79504, at *60 (D.N.J. July 21, 2011).

Because merchantability only requires "that the thing sold [be] reasonably fit for the general

purpose for which it is manufactured and sold," the Court finds it appropriate to consider the

---

[16]While Plaintiff alleges that her laundered clothes smelled like mold after being washed, she
does not claim that the smell permeated the clothes so extensively they were damaged beyond
repair, and it does not appear that this type of harm is a basis for her damage claim.

"general" purpose of the washing machines.  See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 370 (1960)(emphasis added).  The general purpose of the product at issue here, the Miele washing machine, is to wash and clean dirty clothes.  Plaintiff alleges that her Miele washing machine leaves clothes smelling like mold or mildew and that the machine itself smells like mold or mildew.  The Court is satisfied that accepting Plaintiff's allegations as true and reading Plaintiff's complaint in the light most favorable to her, Plaintiff has stated a claim for breach of implied warranty.

Defendants motion to dismiss Count III is DENIED.

**C.  Unjust Enrichment**

1.  Choice of Law

Plaintiff's final cause of action is for unjust enrichment and is pled as an alternative count.  Defendant argues the Court should apply this forum's law of unjust enrichment because there is no conflict between New Jersey and California regarding the law of unjust enrichment.  Defendant further argues that New Jersey imposes a requirement that to be unjustly enriched Miele must have received a benefit directly from Plaintiff.  Defendant does not state whether California law imposes a similar requirement.  Plaintiff claims she has set forth sufficient facts to show a "sufficiently direct relationship" between herself and Defendant.[17]  As to the initial point

---

[17]Plaintiff also presses her argument that a choice-of-law analysis is premature and thus the Court should not apply the law of any particular jurisdiction.  Further, Plaintiff argues that because this is an action brought on behalf of a nationwide class, it is inappropriate to apply the law of any single jurisdiction at this stage.  The Court cannot consider the class as a whole until the putative class is certified.  For now, it is only appropriate to consider each cause of action, and its accompanying choice-of-law analysis, as between the named plaintiff and defendant – in this case as between Montich and Miele.  See Rolo, 155 F.3d at 659.

– whether a conflict exists between New Jersey's and California's law of unjust enrichment – the Court finds the positions of both parties to be lacking.  And, while at first blush there appears to be no material conflict, the answer is not so facile.  But again, no factual record is required under the first step of the "most significant relationship" analysis.

Some courts in this Circuit have held that there is no material conflict between the laws of all states regarding unjust enrichment.  In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. at 58(concluding that "[w]hile there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict"); Agostino, 256 F.R.D. at 464 (finding that no actual conflict exists between the states' laws of unjust enrichment).  The courts in Agostino and In re Mercedes-Benz did not specifically analyze whether there is a conflict between California and New Jersey law, but relied on a premise that generally no conflict exists amongst the states' applications of unjust enrichment.  Both courts relied on Powers v. Lycoming Engines in support of this proposition. See Powers v. Lycoming Engines, 245 F.R.D. 226, 231 (E.D. Pa. 2007) (reviewing unjust enrichment laws of the 50 states, and concluding that, "[a]lthough there are numerous permutations of the elements of the cause of action in the various states, there are few real differences").  Powers, however, specifically stated that "the state of California is not part of the analysis" as it had been excluded from the class at issue there.  Powers, 245 F.R.D. at 230 n11. Further, Powers was vacated by the Third Circuit because "the District Court's choice-of-law exploration was insufficient."  Powers v. Lycoming Engines, 328 Fed. App'x 121, 128 (3d Cir. 2009).  Morever, courts that have specifically analyzed California unjust enrichment law have found a conflict with other states' laws.  Cruz v. Lawson Software, Inc., No. 08-5900, 2010 U.S.

Dist. LEXIS 33437, at *6 (D. Minn. Jan. 5, 2010) (concluding that "material conflicts" exist

among 43 possibly applicable state laws on unjust enrichment claims, including California);

Siegel v. Shell Oil Corp., 256 F.R.D. 580, 584 (N.D. Ill. 2008) (discussing differences in

elements of unjust enrichment claim among several states, including California, in context of a

class certification motion).  Thus, the Mercedes and Agostino cases do not inform the Court's

decision here, and I will proceed to a review of New Jersey and California law on unjust

enrichment.

    To establish a claim of unjust enrichment in New Jersey, "a plaintiff must show both that

defendant received a benefit and that retention of that benefit without payment would be unjust."

Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007).  Further, New Jersey law requires that a

plaintiff have conferred a direct benefit on the defendant.  See VRG Corp. v. GKN Realty Corp.,

135 N.J. 539, 554 (1994) ("The unjust enrichment doctrine requires that plaintiff show that it

expected remuneration from the defendant at the time it performed or conferred a benefit on

defendant and that the failure of remuneration enriched defendant beyond its contractual

rights."), see also Cooper v. Samsung Elecs. Am., Inc., No. 07-3853, 2008 U.S. Dist. LEXIS

75810, at *30 (D.N.J. Sept. 30, 2008) (finding no claim for unjust enrichment because "there was

no relationship conferring any direct benefit on Samsung through Cooper's purchase, as the

purchase was through a retailer, Ultimate Electronics…."); see also Premier Pork L.L.C. v.

Westin Inc., No. 07-1661, 2008 U.S. Dist. LEXIS 20532, at *14 (D.N.J. Mar. 17, 2008) ("quasi-

contract claims involve either some direct relationship between the parties or a mistake on the

part of the person conferring the benefit . . ."); Union Trust Co. of Md. v. Wakefern Food Corp.,

No. 86-728, 1989 U.S. Dist. LEXIS 11754, at *21 (D.N.J. Sept. 8, 1989) ("unjust enrichment

requires a relationship or course of dealings between parties which, if left undisturbed by the

intervention of the law, permits one party to obtain 'unjust enrichment or unconscionable

advantage' over the other") (citation omitted).

First, I note there is some confusion about whether California recognizes a cause of action

for unjust enrichment.  Some California decisions explain that unjust enrichment is merely a

principle and not a cause of action.  Melchior v. New Line Prod., Inc., 106 Cal. App. 4th 779,

793 (Cal. Ct. App. 2003) ("In addition, as the trial court observed, there is no cause of action in

California for unjust enrichment.  Unjust enrichment is a general principle, underlying various

legal doctrines and remedies, rather than a remedy itself."); McKell v. Washington Mutual, Inc.,

142 Cal. App. 4th 1457, 1490 (Cal. Ct. App. 2006) ("There is no cause of action for unjust

enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract

or imposition of a constructive trust.").  Other decisions, including one by the California

Supreme Court, state that a party that is not entitled to relief under any statutory claim is still

"entitled to seek relief under traditional equitable principles of unjust enrichment."  Ghirardo v.

Antonioli, 14 Cal. App. 4th 39, 50 (Cal. 1996); see also Hirsch v. Bank of Am., 107 Cal. App.

4th 708, 271 (Cal. Ct. App. 2003) (applying Ghirardo and holding that plaintiffs pled a valid

cause of action for unjust enrichment); Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726-27

(Cal. Ct. App. 2000); County of Solano v. Vallego Redevelopment Agency, 75 Cal. App. 4th

1262, 1278 (Cal. Ct. App. 1999) (applying Ghirardo and Restatement of Restitution); Shum v.

Intel Corp., 499 F.3d 1272, 1279-80 (Fed. Cir. 2007); ViChip Corp. v. Lee, 438 F. Supp. 2d

1087, 1097 (N.D. Cal. 2006); MV Transp., Inc. v. Omne Staff Leasing, Inc., 378 F. Supp. 2d

1200, 1207 (E.D. Cal. 2005); Westways World Travel v. AMR Corp., 182 F. Supp. 2d 952, 964

34

(C.D. Cal. 2001).

Whether there is a substantive difference between these opinions or whether the issue is more one of semantics is not clear and perhaps beside the point.  It appears California recognizes that a party may recover under a theory of unjust enrichment, be it as an independent cause of action or as a type of remedy.  In any event, the more prudent path is to follow what was said by the California Supreme Court in Ghirado and recognize that Plaintiff is "entitled to seek relief under traditional equitable principles of unjust enrichment."  This is the practice adopted by other courts in this Circuit as well.  In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig., 2009 U.S. Dist. LEXIS 82833, at *44 ("For the purposes of this motion, the court will assume that California law permits a claim for unjust enrichment.").

Now I must consider whether a conflict exists between New Jersey's and California's application of an unjust enrichment claim.  Defendant argues there is no conflict, highlighting the similar general description of unjust enrichment employed by both New Jersey and California courts.  But even though each jurisdiction's law may be founded on the same underlying principles, each jurisdiction may choose to apply those principles in materially different ways.

A claim for unjust enrichment in New Jersey requires privity between the parties, while in California the requirement for privity varies depending on the context.  See, e.g., Kossian v. American Nat'l Ins. Co., 254 Cal. App. 2d 647, 649-650 (Cal. Ct. App. 1967) ("This, of course, is a simplified pronouncement of the doctrine of unjust enrichment, a theory which can, in some instances, have validity without privity of relationship."); Process Specialties, Inc. v. Sematech, Inc., No. 00-414, 2001 U.S. Dist. LEXIS 26261, at *63 (E.D. Cal. Nov. 8, 2001) ("[Q]uantum meruit is legally distinct from unjust enrichment, and while quantum meruit does require privity,

35

unjust enrichment does not.").  For example, in <u>Shersher v. Superior Court</u>, a retail purchaser

sued Microsoft for consumer fraud claims related to the sale of Microsoft routers and network

hardware.  Microsoft's argument that because plaintiff purchasers paid no money directly to

Microsoft, plaintiff could not make a claim for restitution was unavailing.  <u>Shersher v. Superior</u>

<u>Court</u>, 154 Cal. App. 4th 1491, 1500 (Cal. Ct. App. 2007)  ("To confer a benefit, it is not

essential that money be paid directly to the recipient by the party seeking restitution."); <u>see</u> <u>also</u>

<u>Tietsworth v. Sears, Roebuck and Co.</u>, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010).  In another

case, the Ninth Circuit precluded an unjust enrichment claim because the relationship of the

parties was too attenuated.  <u>Doe v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 685 (9th Cir. 2009).

While I can find no California opinion explicitly stating a blanket rule as to whether a

plaintiff must directly confer a benefit on a defendant or not, it appears that based on the specific

facts before me a conflict may exist between New Jersey's and California's application of the law

of unjust enrichment, and thus, it would be necessary to turn to the second prong of the "most

significant relationship" test.  This analysis is governed by Restatement § 221, which states:

> (1) In actions for restitution, the rights and liabilities of the parties with respect to the
> particular issue are determined by the local law of the state which, with respect
> to that issue, has the most significant relationship to the occurrence and the parties
> under the principles stated in § 6.

> (2) Contacts to be taken into account in applying the principles of § 6 to determine
> the law applicable to an issue include:

>> (a) the place where a relationship between the parties was centered,
>> provided that the receipt of enrichment was substantially related to the
>> relationship,

>> (b) the place where the benefit or enrichment was received,

>> (c) the place where the act conferring the benefit or enrichment was done,

(d) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

Restatement (Second) of Conflict of Laws § 221.  The parties, however, neglected to address these factors as both Plaintiff and Defendant operated under a presumption, perhaps erroneously, that there was no conflict of law as to Plaintiff's unjust enrichment claim.  I do not feel it is appropriate to determine which jurisdiction's law should apply without affording the parties the opportunity to brief the privity argument as well as the factors listed above.  Therefore, Defendant's motion to dismiss Count IV is DENIED.  If Defendant should refile a motion regarding this Count, then it should address: (1) whether there is a conflict of law between New Jersey's and California's application of unjust enrichment in light of the above discussion; (2) if there is a conflict then what law should apply as per the "most significant relationship" test; and (3) whether Plaintiff has stated a claim for unjust enrichment.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED-IN-PART and DENIED-IN-PART.  Specifically, the Court dismisses Count I of Plaintiff's Complaint with prejudice and dismisses Count II of Plaintiff's Complaint without prejudice.  Defendant's motion is otherwise denied.  An order will be entered consistent with this Opinion.

Dated: March 27, 2012                    /s/    Freda L. Wolfson
                                          Honorable Freda L. Wolfson
                                          United States District Judge