## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAISY MONTICH, individually and on behalf of all others similarly situated,<br><br>                           Plaintiff<br><br>   v.<br><br>MIELE USA, INC.,<br><br>                         Defendant. | Civil Action No. 11-2725(FLW)(DEA) |

-------------------------------------------------------------------------------------------------------------

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
### TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

-------------------------------------------------------------------------------------------------------------

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market St., Suite 1380
Philadelphia, PA 19102
(215) 564-2300

James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & ANGELO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Jamie E. Weiss
Julie D. Miller
Richard J. Burke
**COMPLEX LITIGATION GROUP**
513 Central Avenue, Suite 300
Highland Park, Illinois  60035
(847)433-4500

*Attorneys for Plaintiff and the Proposed Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................. 1

LEGAL ARGUMENT ...................................................................................... 4

    A.    Plaintiff's Consumer Fraud Claims Should Now
        Proceed to Discovery ...................................................................... 4

        1.    Miele's Fraud Against Consumers is Fully Alleged .................... 4

        2.    Defendant's Misrepresentations Actively Concealed
              the Fact of the Defect and Are Not Mere Puffery ...................... 8

        3.    Defendant's Concealment of the Defect is Actionable ................ 9

    B.    Plaintiff's Unjust Enrichment Claims Should Now Proceed
        to Discovery ................................................................................. 11

        1.    Plaintiff May Proceed With Her Claim of Unjust
              Enrichment Under California Law ............................................. 11

            a.    The Law of California Recognizes Unjust Enrichment
                 in California and Does Not Require Privity ......................... 12

            b.    California Law Applies to Plaintiff's Claims ....................... 13

        2.    Defendant's Additional Argument Seeking Dismissal of
              the Unjust Enrichment Claim is Improper and Unavailing ......... 15

    C.    The Court Should Affirm Its Earlier Ruling That Plaintiff Has a
        Viable Claim for Breach of the Implied Warranty of Merchantability
        Because of the Mold and Mildew .................................................... 18

CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Anunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ........................................................8

*Astiana v. Ben & Jerry's Homemade, Inc.*,
2011 WL 2111796 (N.D. Cal. May 26, 2011) ...............................................7

*Demetro v. Police Dept., City of Cherry Hill*,
2011 WL 5873603 (D.N.J. Nov. 22, 2011) ..................................................17

*Doe v. Wal-Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009) .......................................................................13

*Elias v. Ungar's Food Products, Inc.*,
252 F.R.D. 233 (D.N.J. 2008) ......................................................................18

*Falk v. General Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) .......................................................10

*Ghirado v. Antonioli*,
14 Cal. 4th 39, 57 Cal. Rptr. 2d 687 (1996) ...............................................12

*Glazer, et al. v. Whirlpool.*,
1:08-cv-01624 (E.D.Oh.) ...............................................................................3

*Gray v. Toyota Motor Sales, U.S.A.*,
2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ....................................9, 10, 11

*Greenman v. Yuba Power Prods.*,
59 Cal. 2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1963) ..............................18

*Guidance Endodontics, LLC v. Dentsply Intern., Inc.*,
2011 WL 1336473 (D.N.M. Mar. 31, 2011) ..................................................9

*Harper v. LG Electronics, Inc.*,
595 F. Supp. 2d 486 (D.N.J. 2009) ................................................................7

*Harper v. LG Electronics USA, Inc.*,
08-cv-0051-FSH (D.N.J.) ...............................................................................3

*Hughes v. Panasonic Consumer Elecs. Co.*,
2011 WL 2976839 (D.N.J. July 21, 2011) ...................................................19

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .......................................................................17

*In re Facebook PPC Advertising Litig.*,
    2010 WL 3341062 (N.D. Cal. Aug. 25, 2010) ...................................................................... 5

*In re Ferrero Litigation*,
    2011 WL 5438979 ..........................................................................................................5, 7

*In re Ford Co. Ignition Switch Prods. Liab. Litig.*,
    2001 WL 1266317 (D.N.J. Sept. 30, 1997).......................................................................... 19

*In re Tobacco II Cases*,
    46 Cal. 4th 298, 207 P.3d 20 (2011)...................................................................................... 5

*In re Toshiba Amer. HD DVD Mktg. and Sales Practices Litig.*,
    2009 WL 2940081 (D.N.J. Sept. 11, 2009)........................................................................... 19

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................................................... 18

*Jakubowski v. Minn. Mining & Mfg. Co.*,
    42 N.J. 177 (1964) ................................................................................................................ 19

*Keegan v. American Honda Motor Co., Inc.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012) ................................................................................. 18

*Kossian v. American Nat'l Ins., Co.*,
    254 Cal. App. 2d 647, 62 Cal. Rptr. 225 (5th Dist. 1967)..............................................12, 17

*Local 863 Pension Fund v. Foodtown, Inc.*,
    296 F.3d 164 (3d Cir. 2002) ................................................................................................... 5

*McKell v. Washington Mut., Inc.*,
    142 Cal.App.4th 1457, 49 Cal.Rtpr.3d 227 (2006) .............................................................. 12

*Montich v. Miele USA, Inc.*,
    --- F. Supp. 2d ----, 2012 WL 1005329 (Mar. 27, 2012). Pending............................................4

*Morgan v. AT & T Wireless Services, Inc.*,
    177 Cal. App. 4th 1235, 99 Cal. Rptr. 3d 768 (Cal. App. 2 Dist., 2009) ................................ 5

*O'Shea v. Epson America, Inc.*,
    2011 WL 3299936 (C.D. Cal. July 29, 2011) ...................................................................... 11

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008)..............................................................................10, 11

*Rolo v. City Investing Co. Liquidating Trust*,
    155 F.3d 644 (3d Cir.1998) ..................................................................................................... 4

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................ 18

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
   742 F.2d 786 (3d Cir.1984), *cert. denied*, 469 U.S. 1211 (1985) ........................... 5

*Shersher v. Superior Court*,
   154 Cal. App. 4th 1491, 65 Cal. Rptr. 3d 634 (Cal. Ct. App. 2007) ..................... 13

*Stewart v. Beam Global Spirits & Wine, Inc.*,
   --- F. Supp. 2d ---, 2012 WL 2523039 (D.N.J. June 29, 2012) ............................ 11

*Tait v. BSH Appliances Corp.*,
   2011 WL 3941387 (C.D. Cal. Aug. 31, 2011) ...................................................... 7

*Tietsworth v. Sears, Roebuck and Co.*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................... 13

*U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*,
   2000 WL 1207162 (E.D. Pa. Aug. 24, 2000) ......................................................... 7

## STATUTES, REGULATIONS AND RULES

Fed.R.Civ.P. 9(b) ................................................................................... 1, 2, 4, 5, 7

Fed.R.Civ.P. 12(b)(6) ..................................................................................... 17

Restatement (Second) Conflict of Laws § 221 .................................................. 15

Restatement (Second) Conflict of Laws §188 ................................................... 14

## <u>INTRODUCTION</u>

Plaintiff, Daisy Montich, alleges that she purchased one of Miele USA, Inc.'s ("Miele" or "Defendant") front-loading washing machines ("washing machines" or "machines") which quickly developed ineradicable mold and mildew.  Plaintiff made the decision to purchase Defendant's machine based on Defendant's marketing its machines as, among other things, water and energy efficient, and as providing outstanding cleaning and dependability, assertions Defendant continued to make even after Plaintiff purchased her machine.  Contrary to these representations, Plaintiff's washing machine began to stink of mold and mildew, tainting clothes that were washed in the machine.  Contrary to these representations, when Plaintiff contacted Defendant about the mold and mildew, she was told nothing about the defect in the machine that caused the mold and mildew, but was instructed to run empty wash loads with a descaler.  The result was to waste water with no apparent effect on the mold and mildew problem.  Plaintiff has sought relief for consumer fraud, breach of implied warranty and unjust enrichment.

Before the Court is the second go-around for Defendant on a motion to dismiss.  In the prior motion, the Court denied Defendants motion to dismiss Plaintiff's implied warranty and unjust enrichment counts. The Court found that Plaintiff has a viable claim for breach of implied warranty and directed the parties to address certain discrete issues regarding the law of unjust enrichment before fully resolving the issues raised by Defendant.  The Court also found that California law (and not New Jersey law, as Plaintiff initially alleged) governed Plaintiff's consumer fraud claims and that, against Defendant's general attack on the adequacy of Plaintiff's allegations under Rule 9(b), that Plaintiff had simply not alleged her "actual reliance" on any of the representations made by Miele about its machines.  Accordingly, the Court granted the initial

motion to dismiss the consumer fraud claims without prejudice and with leave to Plaintiff to re-plead her consumer fraud claims, including her "actual reliance," under California law.

Defendant has run far afield from the matters left open by the Court in that Opinion, raising several arguments, including renewed challenge to Plaintiff's implied warranty claim, that should simply be disregarded and are otherwise unfounded.  Indeed, Defendant presents matters of evidence beyond the allegations of the Complaint, in support of its motion.  Clearly, this case is ready for discovery.

Regarding the two matters raised by the Court relating to Plaintiff's consumer fraud and unjust enrichment claims, these claims may now also proceed.  The one issue was regarding the law of unjust enrichment. The Court requested that the parties brief whether New Jersey or California law should govern and, under that state's law, whether privity was required.  Given the conflict of law analysis and Defendant's earlier arguments regarding the application of California law to Plaintiff's claims, California law, which has no requirement of privity, should govern. Plaintiff's unjust enrichment claim could proceed.

The other matter related to Plaintiff's need to allege "actual reliance" on Miele's representations about its machines.  In her initial complaint, she did not allege that she personally relied on any representations made by Miele.  Her Amended Complaint cures this deficiency: she relied on Miele's representations about the qualities of its machines, including their efficiency, prior to her purchase.  Defendant, however, again launches a general attack on her allegations, claiming that they still fail under Rule 9(b), as if it has no idea what Plaintiff is claiming Miele said about its machines.  It cannot be said that Defendant will deny that it marketed its machines, at a premium price-point, as efficient, worth the investment, and providing an outstanding clean for the family.  Rather, discovery will confirm the many ways it made these very assertions in

2

various publications from the time that Plaintiff was researching which machine to purchase throughout the entire class period.[1]

As this Court is aware, there are similar actions pending against other manufacturers of front load washing machines, which actions have since moved into discovery, and one being certified as a class, which certification was affirmed earlier this year by a Court of Appeal.[2]   The allegations in those cases were no different than those raised in the case *sub judice*.  Now is the time for this case to move to discovery and toward, among other pretrial maters, eventual briefing on certification of a class of other purchasers of Defendant's washing machines.

---

[1]   Indeed, Miele's website currently provides in a section called "features and benefits":

"Having more experience than almost any other appliance company on the planet, Miele has taken the washing machine in Europe, and around the world, to *the highest level of durability, reliability* and convenience *while always remembering the product's potential impact on our cherished natural resources*."

"Miele's . . . laundry systems offer *the very best quality, reliability, longevity and cleaning performance available—__guaranteed.__*"

"While this commitment to quality assurance results in a slightly higher retail price, we, at Miele, feel that this level of control is needed to guarantee that our products outperform and outlive every other product on the market while at the same time surpassing *your expectations of fabric care, durability and reliability.* In fact, independent surveys show that the average replacement cycle for a Miele washing machine is nearly 45% longer than other brands."

http://www.mieleusa.com/products/benefits.asp?cat=4&subcat=21&benefit=50&menu_id=18&nav=20&snav=180&tnav=185&oT=147&active=Our%20Products&subm=Home%20Appliances&thirdL=Laundry%20Care&fourthL=Washers&fifthL=Features%20%26%20Benefits& (last visited July 23, 2012) (emphases added).

[2]   These cases include: *Harper v. LG Electronics USA, Inc.*, 08-cv-0051-FSH (D.N.J.) in which the parties have fully briefed the plaintiffs' motion for class certification; *Glazer, et al. v. Whirlpool.*, 1:08-cv-01624 (E.D.Oh.) in which the order certifying a class has been affirmed by the Sixth Circuit; and *Tait v. BSH Home Appliances Corp.* (Bosch), 8:10-cv-00711-DOC-AN (S.D.Cal.) in which Bosch filed its opposition to class certification on July 11, 2012.

## LEGAL ARGUMENT

**A. PLAINTIFF'S CONSUMER FRAUD CLAIMS SHOULD NOW PROCEED TO DISCOVERY**

**1. MIELE'S FRAUD AGAINST CONSUMERS IS FULLY ALLEGED**

Defendant mounts a general assault on the adequacy of Plaintiff's allegations of fraud under Rule 9(b), an attack it launched with very limited success in its prior motion to dismiss. After reviewing the allegations of Plaintiff's initial complaint, the Court found only that Plaintiff had not adequately alleged her reliance on Miele's misrepresentations or that she would have acted differently had Miele been candid about its machines. Opinion 20-21, *10.[3] In particular, the Court concluded that

> Without any allegation of actual reliance, Plaintiff's complaint is lacking "all the essential factual background" necessary to inform the Court of Plaintiff's fraud claim, including what representations she relied on, if any, *or* where and how those representations were made, such that Plaintiff could have learned of the defect had Miele not omitted it, whether Plaintiff would have acted differently had she known about the alleged defect.

*Id.* (emphasis added).

Miele takes this statement by the Court and to demand all manner of specificity regarding the precise time, manner, place, author, publisher, and verbiage she read or heard. Def. Br. 9. However, the purpose and discipline of Rule 9(b) does not demand such detailed allegations. In the Third Circuit, the Rule 9(b) standard is "a generous one" that is applied by the courts with "some flexibility." *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir.1998) (observing that courts in the Third Circuit apply Rule 9(b) with "some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants");

---

[3]    *Montich v. Miele USA, Inc.*, --- F. Supp. 2d ----, 2012 WL 1005329 (Mar. 27, 2012). Pending formal publication of the Opinion, references in this brief will be provided to both the page number of the Opinion entered in the docket in this case as well as to the Westlaw citation.

*See also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984),

*cert. denied*, 469 U.S. 1211 (1985).  As is relevant to the instant motion, while

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the
> alleged fraud in order to place the defendants on notice of the precise misconduct
> with which they are charged, and to safeguard defendants against spurious
> charges of immoral and fraudulent behavior. It is certainly true that allegations of
> "date, place or time" fulfill these functions, *but nothing in the rule requires them*.

*Seville Indus.*, 742 F.2d at 791 (emphasis added); *see also Local 863 Pension Fund v. Foodtown,*

*Inc., 2*96 F.3d 164, 172 n.10 (3d Cir. 2002).

Similarly, as the cases relied on by Defendant hold, the purpose of Rule 9(b) in claims of

consumer fraud under California law is only to require a plaintiff to be "specific enough to give

defendant notice of the particular misconduct which is alleged to constitute the fraud charged so

that they can defend against the charge and not just deny that they have done no wrong." *In re*

*Facebook PPC Advertising Litig.*, 2010 WL 3341062, at * 9 (N.D. Cal. Aug. 25, 2010) (quoting

*Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).  Thus, as regards the kind of

specificity demanded by Defendant, "a plaintiff cannot plead a specific time or place of a failure

to act" when the claims are based, at least in large part on an omission. *Id.* (citing *Washington v.*

*Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987)).  Similarly, where the claims are based on

what would be part of a national marketing campaign involving different media, brochures,

advertisements, in-store materials and the like, "the plaintiff is not required to plead with an

unrealistic degree of specificity that the plaintiff relied on particular advertisements or

statements." *In re Tobacco II Cases*, 46 Cal. 4th 298, 328, 207 P.3d 20 (2011); *In re Ferrero*

*Litigation*, 2011 WL 5438979, at ** 2-3 (S.D. Cal. Aug. 29, 2011); *Morgan v. AT & T Wireless*

*Services, Inc.*, 177 Cal. App. 4th 1235, 99 Cal. Rptr. 3d 768 (Cal. App. 2 Dist., 2009).  In other

words, if there is no dispute that a manufacturer said something about a product in its marketing,

such as that a washing machine is energy and water efficient, a plaintiff need not identify a single discrete instance when that representation had been made; rather, a manufacturer will be held to its representations, false or otherwise.

Instantly, with the additional allegations in the Amended Complaint, Plaintiff has adequately apprised Defendant of the course of its consumer fraud, and her reliance on Defendant's misrepresentations and omissions. Plaintiff now alleges an on-going campaign of representations about the economies and efficiency of Defendant's machines (and active concealment of the defect after Plaintiff bought her machine). Amended Complaint ¶¶ 16, 19, 22. Plaintiff alleges that Miele made false representations in its marketing materials that actively concealed the truth about the machines:

> [G]iven the marketing and other materials about the Miele washing machines she had read and to which she was exposed *prior* to her purchase of a Miele washing machine, she expected to purchase a washing machine that saved energy and water while providing outstanding cleaning and dependability . . . .Such qualities were material to and played a substantial part in her decision to purchase a Miele washing machine. Indeed, she paid more for the Miele washing machine expecting that it would meet such expectations, and was unaware of the defect *which Miele omitted from these materials* and [otherwise] concealed from the public.

*Id.* ¶ 19

Indeed, Plaintiff further alleges that Defendant never "came clean" about the defect in the machines, which meant that, contrary to the affirmative representations of economies and efficiency, she would have to run empty cycles (on top of having to deal with the problem of the smell in her clothes), wasting water and other resources. *Id.* ¶¶ 6, 16, 22. As Plaintiff also states, even when she contacted Defendant about the problems she was having with her machine, "Defendant continued its active concealment of the defect in its machines," and recommended that she run empty wash cycles with a descaler (which did not rectify the mold and mildew

problem).  *Id.* ¶ 22.  In reliance on Miele's misrepresentations and omission of such a material fact (that a washing machine would develop evident and permanent mold and mildew within a year), she purchased one of Miele's washing machines, which she would not have done had Miele told the truth.  *Id.* ¶ 23; *see also id.* ¶ 15, 16.  Similar allegations have passed muster under Rule 9 in other cases involving other front loading washing machines.  *Tait v. BSH Appliances Corp.*, 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011); *Harper v. LG Electronics, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009).

To the extent details about each of the "who, what, when, where and how" of Defendant's fraud are needed, Plaintiff has adequately met each.  WHO: Miele.  WHAT: misrepresents the qualities of the machines as regards efficiency and economy.  WHERE: In the course of Miele's marketing campaign.  WHEN: *prior* to Plaintiffs' purchase of her machine and continuing thereafter.  HOW: by stating that its machines were water and energy efficient and worth the premium price, while the defect renders the machines inefficient and otherwise undesirable.  Such allegations are more than sufficient under Rule 9.  *See, e.g.*, *In re Ferrrero Litig.*, 2011 WL 5438979, at * 2 (S.D. Cal. Aug 29, 2011); *see also Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at * 6 (N.D. Cal. May 26, 2011).

Regarding Defendants entirely new argument that Plaintiff has not adequately alleged scienter (that is, Defendant acting with knowledge of the defect), this argument is supported neither by law nor the allegations of the Amended Complaint.  Rule 9(b) expressly states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Indeed, when intent is not an element of proof, as with the California consumer fraud statutes, matters such as scienter may be alleged in a conclusory fashion.  *See U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.,* 2000 WL 1207162, at *9 n.13 (E.D. Pa. Aug. 24, 2000).

Moreover, Plaintiff has alleged that Defendant knew about and actively concealed the existence of the defect before Plaintiff purchased her machine:  Defendant "knowingly sold Plaintiff and others washing machines essentially unusable for the purposes for which they were purchased." Amended Complaint ¶ 42; *see also* Amended Complaint ¶ 22 ("If Plaintiff had known about the defect in the Miele Washing Machine (which Miele actively concealed) when she was shopping for a washing machine, she would not have purchased [it].") and ¶ 37 (discussing Defendant's exclusive knowledge of the defect in the machines).

### 2.  DEFENDANT'S MISREPRESENTATIONS ACTIVELY CONCEALED THE FACT OF THE DEFECT AND ARE NOT MERE PUFFERY

Given a second bite at the apple to argue that Plaintiff still has not adequately alleged her reliance on Defendant's consumer fraud, Defendant adds a new argument that what it said about its washing machines was not to be believed, but was mere puffery.  In support, Defendant focuses only on cases where bald assertions of "high or superior quality" such as "outstanding quality, reliability, and performance" (*Anunziato*) or "designed for years of dependable operation" (*Tietsorth*) were claimed by a plaintiff to be deceptive.  However, the representations that Defendant made here are not being challenged on their own terms, but as statements that are measurably false in light of the defect.  Accordingly, the truth or falsity of Defendant's representations can and will be "established or disproved through discovery, and hence [are] not mere puffery."  *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140-41 (C.D. Cal. 2005).

Plaintiff alleges repeatedly that Miele marketed the washing machines as products that "saved energy and water while providing outstanding cleaning and dependability."  Amended Complaint ¶¶ 9, 15, 19.  In contrast to such representations, the defect in Defendant's washing machines causes the accumulation of mold and mildew.  Amended Complaint ¶¶ 2, 6, 11, 16, 20. Not only does the accumulation of mold and mildew mean that the washing machines do not

clean, outstanding or otherwise, the "fix" offered by Miele, running empty cycles, wastes rather than saves energy and water.  Amended Complaint ¶ 22.  The actual amount of inefficiency and wastage, as well as the degree of mold and mildew accumulation in the cleaning drum of the washing machine are all amenable to proof or refutation through discovery, and are actionable misrepresentations.  *See Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 2011 WL 1336473 (D.N.M. Mar. 31, 2011) (finding that "'[e]fficient, safe and flexible,' are statements of fact.")

### 3.   DEFENDANT'S CONCEALMENT OF THE DEFECT IS ACTIONABLE

Finally, Defendant also adds to this round of briefing the argument that its concealment of the defect is not actionable because Defendant had no obligation to disclose the defect and such an omission was insufficiently plead.  Plaintiff already demonstrated how her allegations of fraud satisfy Rule 9 and, in particular, how she was promised "outstanding cleaning," but got mold and mildew, and how she was promised water and energy efficiency, but when she personally called Miele about the problem, she was told to run empty wash cycles.  As regards a duty to speak honestly, the law does not allow anyone to speak out of one side of their mouth while the other remains silent.

The state of the law in California for the duty to disclose a material fact as part of a consumer fraud claim is a little more complicated than Defendant allows.  As the cases it relies on state, there is a split in authorities:  one line of cases allows for a duty to disclose in four situations, and the other line is more conservative, providing for a duty in only two circumstances.  *See Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *4 (C.D. Cal. Jan. 23, 2012).  Under either line of authority, however, Defendant has a duty to disclose the problem with its machines.

Under the first line of cases, a duty to disclose exists in four situations:  (1) when the defendant has a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material facts.  *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337, 60 Cal. Rptr. 2d 539 (1997)).[4]  While there is no fiduciary relationship between Plaintiff and Miele, the other three situations are present.  Miele had exclusive knowledge of material facts not known to Plaintiff. Amended Complaint ¶¶ 15, 16, 19.  Miele actively concealed the defect, even when contacted by Plaintiff (and others).  *Id.* ¶¶ 13, 16, 22.  Defendant promised water and energy efficiency, yet to conceal the defect, recommended that Plaintiff run empty wash cycles when she contacted Miele directly about the mold and mildew problem.  *Id.* ¶¶ 15, 19, 22.

Under the second line of authority, which Defendant prefers, a duty to disclose a material fact arises in two circumstances:  (1) the omission is contrary to a representation made by the defendant; or (2) the omission pertains to a fact the defendant was otherwise obligated to disclose, such as a safety issue.  *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008) (citing *Daugherty v. American Honda Motor Co.*, 144 Cal.App.4th 824, 51 Cal. Rptr. 3d 118 (2006)).  Here, Defendant promised one thing, which the undisclosed defect took away.  Defendant promised water and energy efficiency, but required that purchasers run empty wash cycles to deal with the mold and mildew created by the defect.  Similarly, Defendant promised outstanding cleaning, but delivered a washing machine that quickly developed

---

[4]    There is no requirement under this line of authority, that the fact implicate safety issues. *See, e.g.*, *Gray*, 2012 WL 313703, at *3-4. Indeed, such a requirement of a safety issue would effectively mean that, despite a recognized split in authority, there was actually no difference between these two lines of authority.

ineradicable mold and mildew.  In contrast, the cases cited by Defendant do not have contrasting representations.  Rather, they were either pure omissions cases (*Gray*, 2012 WL 313703), were truthful representations of product components (*Oestreicker*, 544 F. Supp. 2d 964) or involved representations that were truthful disclosures of standard test results (such as EPA mileage tests (*Gray*) or continual print yield tests (*O'Shea v. Epson America, Inc.*, 2011 WL 3299936 (C.D. Cal. July 29, 2011))) with no promises of actual results which varied.

### B.   PLAINTIFF'S UNJUST ENRICHMENT CLAIMS SHOULD NOW PROCEED TO DISCOVERY

#### 1.   PLAINTIFF MAY PROCEED WITH HER CLAIM OF UNJUST ENRICHMENT UNDER CALIFORNIA LAW

In the Opinion denying Defendant's initial motion to dismiss, the Court directed the parties to address three points raised in the course of the briefing and the Opinion.  Opinion at 31-37, *15-18.  First, whether there was a conflict between California and New Jersey law with regard to the availability of unjust enrichment as a cause of action under California law and whether privity is required under California law.[5]  Second, if there is a conflict between the laws of California and New Jersey, which law governs Plaintiff's claims.  Finally, under the law of decision, whether unjust enrichment is available and/or whether a requirement of privity is fatal

---

[5]    The Court determined that New Jersey law requires privity.  Opinion at 33, * 13. Respectfully, Plaintiffs resubmit that there is no requirement of privity under New Jersey law. Indeed, since the Opinion was issued in this case, the Court has had further reason to revisit the question of the requirement of privity in *Stewart v. Beam Global Spirits & Wine, Inc.*, --- F. Supp. 2d  ---, 2012 WL 2523039 (D.N.J. June 29, 2012), finding that under New Jersey law a defendant-manufacturer was no stranger to the purchase of its goods by a plaintiff-consumer and had "some direct relationship" to the claims of unjust enrichment.  *Id.*, *7.  To the extent the Court is willing to reconsider its earlier Opinion, and find that New Jersey law does not require privity, there is no conflict between the laws of New Jersey and California, and there is no need for an analysis of the law of decision: New Jersey law may apply.   However, to the extent the Court is not inclined to reconsider its earlier argument, Plaintiff demonstrates herein that there is no requirement of privity under California law, which should provide the rule of decision for Plaintiff's claim.

to Plaintiff's claims.  In addition to briefing these points, Defendant has now claimed, based on

facts outside of the four corners of the Amended Complaint, that the existence of an express

warranty precludes Plaintiff's claim for unjust enrichment.  This argument will be dealt with

later.

> a.   *The Law of California Recognizes Unjust Enrichment in California*
> *and Does not Require Privity*

Regarding the availability of a claim of unjust enrichment under California law,

Defendant concedes that unjust enrichment is recognized under California law.  Def. Br. at 16.

Indeed, the Supreme Court of California has squarely held that litigants have the right to seek

"relief under traditional equitable principles of unjust enrichment."  *Ghirado v. Antonioli,* 14 Cal.

4th 39, 50, 57 Cal. Rptr. 2d 687, 693 (1996).  Musings since that decision on the lower appellate

level have been largely over semantics.  *See McKell v. Washington Mut., Inc.*, 142 Cal.App.4th

1457, 1490, 49 Cal.Rtpr.3d 227 (2006) ("There is no cause of action for unjust enrichment.

Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or

imposition of a constructive trust.")

Moreover, California law does not require privity between the parties in a claim of unjust

enrichment.  *Kossian,* the seminal case holding that strict privity, like that between contracting

parties, is not required for an equitable claim of unjust enrichment stated that:

> the doctrine recognizes an obligation imposed by law regardless of the intent of
> the parties.  *In these circumstances there need be no relationship that gives*
> *substance to an implied intent basic to the 'contract' concept, rather the*
> *obligation is imposed because good conscience dictates* that under the
> circumstances the person benefitted should make reimbursement.

*Kossian v. American Nat'l Ins., Co.*, 254 Cal. App. 2d 647, 650, 62 Cal. Rptr. 225, 227

(5th Dist. 1967) (emphasis added).

As the Court recognized in its Opinion, such reasoning has been used to allow retail purchasers to sue manufacturers, even though the manufacturer did not sell directly to the ultimate purchaser.  Opinion at 36, *17.  As in *Tietsworth v. Sears, Roebuck and Co.,* 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010), Plaintiff has alleged that sales of Defendant's washing machines were increased by Defendant's failure to disclose the defect.  Amended Complaint ¶ 63.  Similarly, in *Shersher v. Superior Court,* a retail purchaser sued Microsoft for consumer fraud claims related to the sale of Microsoft routers and network hardware through retail outlets, and was permitted to seek restitution directly from Microsoft.  *Shersher v. Superior Court,* 154 Cal. App. 4th 1491, 1500, 65 Cal. Rptr. 3d 634 (Cal. Ct. App. 2007) ("To confer a benefit, it is not essential that money be paid directly to the recipient by the party seeking restitution.").  Plaintiff here stands in the same relationship with Miele as Shersher did with Microsoft.  With regard to the decision from the Ninth Circuit identified by the Court in its earlier Opinion, the relationship was not one between a purchaser and a manufacturer of a consumer good.  Rather, in *Doe v. Wal-Mart Stores, Inc.*, 572 F.3d 677 (9th Cir. 2009), employees of some of Wal-Mart's foreign suppliers were held to have too distant a relationship to Wal-Mart to assert a claim of unjust enrichment when Wal-Mart did not enforce its "Standards of Suppliers," including certain labor practices, with the supplier that employed those plaintiffs.

### b.  *California Law Applies to Plaintiff's Claims*

Given the conflict between the law of unjust enrichment in California and New Jersey (*but see* footnote 5) as regards privity, a conflict of law analysis is appropriate.  While the money ended up with Miele in its headquarters in New Jersey, the rest of the relationship between Plaintiff and Defendant, that is her purchase of the washing machine and her use of the washing machine occurred in California, where Plaintiff lives.  As this Court noted, the conflict of law

analysis in this case is under the "most significant relationship" test which, for unjust enrichment

claims is governed by Restatement § 221 (*see* Comment (a)).  That section states:

> (1) In actions for restitution, the rights and liabilities of the parties with respect to the particular issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

>> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,

>> (b) the place where the benefit or enrichment was received,

>> (c) the place where the act conferring the benefit or enrichment was done,

>> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

>> (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Finding that California has the most significant relationship to the unjust enrichment

claims is wholly in keeping with the arguments made by Defendant in its initial motion, where it

argued for the application of California law because that is where Plaintiff lives, and where she

purchased and uses her washing machine.  Initial Def. Br. 4-7 (arguing for application of

California law to the consumer fraud claims); *Id.* at 9 (arguing that California law applies to

Plaintiff's warranty claim).  This is particularly significant as the conflict of law analysis for both

warranty claims (under Restatement (Second) Conflict of Laws §188) and unjust enrichment

(under Restatement (Second) Conflict of Laws § 221) both turn on "the most significant relationship to the occurrence and the parties under the principles stated in § 6." The Court ultimately applied New Jersey law to Plaintiff's claim of breach of implied warranty because there was no conflict between the laws of California and New Jersey for the purposes of the initial motion to dismiss. Opinion at 26, *13. However, when examining Section 6 for the conflict of law analysis regarding Plaintiff's consumer fraud claims, this Court's conclusion that California law governed Plaintiff's consumer fraud claims was "further bolstered by the factors listed in § 6 of the Restatement." Opinion at 16, *18. The dissonance in Defendant's argument here with its prior arguments and the earlier decision by the Court seems best explained by the fact that Defendant's current motion to dismiss Plaintiff's unjust enrichment claims is on better footing under New Jersey law, and not by some idiosyncratic fact that requires that a different law should apply uniquely to Plaintiff's unjust enrichment claims.

**2. DEFENDANT'S ADDITIONAL ARGUMENT SEEKING DISMISSAL OF THE UNJUST ENRICHMENT CLAIM IS IMPROPER AND UNAVAILING**

In a new argument, introducing new matters that are not part of the four corners of Plaintiff's Amended Complaint, Defendant now argues that Plaintiff's claim for unjust enrichment is barred by an express warranty through which Plaintiff should have sought relief. As Defendant states, Plaintiff "began to experience the alleged mold/mildew issue . . . *within one year of use* of the machine. [She] had the right to obtain a repair from Miele 'free of charge' back in 2008" under a purported one-year warranty. Def. Br. at 20. There are several problems with this argument: it misstates the allegations in the Amended Complaint, it relies on documents submitted by Defendant that are not part of the Amended Complaint, and it is not supported by law.

15

First, Plaintiff alleges that "Within *one year of delivery,* [she] began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on the clothes and other items washed in the Washing Machine." Amended Complaint ¶ 6. Although she purchased the machine in July 27, 2007, she did not receive the machine until September 25, 2007. *Id*. The Limited Warranty that Defendant offers as providing her a repair "free of charge" only provides for a warranty period of "one (1) year from the *date of purchase*" not the later date of delivery. Declaration of Roland Weingartner, Exhibit A ("Weingartner Decl.") Indeed, it is not clear from the face of the complaint when exactly Plaintiff started noticing the problem, but Defendant offers further that the only record it has of contact with Plaintiff after the sale is in October 28, 2010, well after one year from both the purchase and the eventual delivery of the machine. Weingartner Decl., Exhibit B. It appears that Plaintiff was never eligible for a "free of charge repair" under the Limited Warranty.[6]

Second, not only is the basis of Defendant's new argument flawed, it is based on documents that are not part of the Amended Complaint and should be disregarded. Defendant offers a document it claims was the type of Limited Warranty extended with washing machines sold during the time Plaintiff purchased her machine and a screen shot of one of Miele's databases that purportedly relate to Plaintiff. Weingartner Decl. Plaintiff has no basis to accept the authenticity or accuracy of these documents on Mr. Weingartner's declaration. Indeed, neither Plaintiff nor the Court have any understanding of the database from which the screen shot was purportedly made, the possibility that entries in the database are mistaken or missing, or whether other warranties besides the one Mr. Weingartner presents may have been extended at

---

[6] Moreover, as a practical matter, the allegations of the complaint clearly state that Defendant denies that there is a defect (that is, anything to repair), and only instructed Plaintiff to run empty loads with a descaler.

the time, or the way Defendant has interpreted its terms.  Moreover, Plaintiff asserts no claims based on the Limited Warranty, and has not sought relief based upon it.  Indeed, Defendant has consistently denied the existence of any defect in the machines relating to the accumulation of mold and mildew and would, accordingly, deny any warranty coverage for timely submitted claims, except to recommend running empty wash cycles with a descaler.  Such unauthenticated documents which provide no basis for Plaintiff's claims are not properly considered by the Court on a motion under Rule 12(b)(6).  *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that unauthenticated documents and documents that were not integral or explicitly relied on by a plaintiff are not properly considered at the pleadings stage); *Demetro v. Police Dept., City of Cherry Hill*, 2011 WL 5873603, at *11 n.4 (D.N.J. Nov. 22, 2011).

Finally, given the fact that the purported Limited Warranty (even as presented by Defendant) does not govern the claims in this suit (above), there is no impediment to Plaintiff's unjust enrichment claim.  Indeed, Plaintiff's claim for unjust enrichment is not of the kind that would be precluded by the existence of a contract.  The *Kossian* court recognized that claims for unjust enrichment may be one of two kinds:  *either* implied-in-fact/quasi-contracts *or* "obligation imposed by law regardless of the intent of the parties."  *Kossian*, 254 Cal.App.2d at 650.  Each of the cases cited by Defendant found implied-in-fact contracts were precluded when their purported terms merely mirrored the terms of the express contracts under which the plaintiffs also sought relief.  Here, Plaintiff is not seeking relief under a theory of quasi-contract.  Rather she seeks relief based, in measurable part, on the unfairness of Defendant's deceptions, and expressly alleges that "mold or mildew was not covered under the warranty."  Amended Complaint ¶ 63.

17

**C.    THE COURT SHOULD AFFIRM ITS EARLIER RULING THAT PLAINTIFF HAS A VIABLE CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY BECAUSE OF THE MOLD AND MILDEW**

Notwithstanding this Court's earlier decision that Plaintiff has alleged a viable claim for Defendant's breach of the implied warranty of merchantabilty, Defendant again argues for dismissal of this claim by asserting that Plaintiff's washing machine is still running.  Def. Br. 24. This, Defendant claims, is the "minimum level of quality" of any consumer good required for merchantability.[7]  *Id.*  As this Court held in denying Defendant's prior motion to dismiss Plaintiff's claim of breach of implied warranty, the fact of mold and mildew accumulation in the washing machine, and contamination of clothes washed in this machine, render the washing machine unmerchantable:

---

[7]    Defendant also relies on the screen shot of Miele's database that it improperly introduced with the Weingartner declaration. As argued above, this document should be disregarded in deciding the pending motion.  Moreover, Defendant appears to skirt around some concern with whether it received adequate notice about the defect.  To the extent that notice is an issue, there is no basis in the complaint to find that Miele never received notice; rather Plaintiff plainly alleges that she (along with many other purchasers of Miele's washing machines) contacted Miele with concerns about the mold and mildew growth, and was told to run empty wash cycles. Amended Complaint ¶ 57.  Indeed, Defendant had knowledge of the defect and actively concealed it, explaining to Plaintiffs and others that simply running empty wash cycles would do the trick.  Moreover, there is no legal need for any such notice for warranty claims to proceed. *See, e.g.*, *Keegan v. American Honda Motor Co., Inc.*, 838 F. Supp. 2d 929 (C.D. Cal. 2012); *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices*, 754 F. Supp. 2d 1145, 1180 (C.D. Cal. 2010); *Greenman v. Yuba Power Prods.,* 59 Cal. 2d 57, 61, 27 Cal. Rptr. 697, 377 P.2d 897 (1963) (notice not required in action against a manufacturer and by purchasers "against [a] manufacturer[ ] with whom they have not dealt."); *cf. Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 988-89 (N.D. Cal. 2009) (noting the *Greenman* exception to the notice requirement but nevertheless dismissing a claim for failure to give notice to the manufacturer where an electronic device was purchased directly from the manufacturer's online store); *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 251 (D.N.J. 2008) ("In addition, plaintiffs need not give notice of the breach against a manufacturer who was not the immediate seller of the product, and, in any event, a civil complaint would satisfy any such notice requirement.") (citing *Strzakowlski,* 2005 WL 2001912 * 3 and  *Cipollone v. Liggett Group, Inc.*,683 F. Supp. 1487, 1498 (D.N.J. 1988)).

> Because merchantability only requires "that the thing sold [be] reasonably fit for the <u>general</u> purpose for which it is manufactures and sold," the Court finds it appropriate to consider the "general" purpose of the washing machines.  *See Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 370 (1960) (emphasis added).  The general purpose of the product at issue here, the Miele washing machine, is to wash and clean dirty clothes.  Plaintiff alleges that her Miele washing machine leaves clothes smelling like mold or mildew and that the machine itself smells like mold or mildew.  The Court is satisfied that accepting Plaintiff's allegations as true and reading Plaintiff's complaint in the light most favorable to her, Plaintiff has stated a claim for breach of implied warranty.

Opinion at 31, *14.

In other words, a washing machine must, minimally, fundamentally wash and be clean to be merchantable.  Defendant takes exception to this ruling without ever addressing it.  Rather, Defendant cites to a series of cases that are plainly distinguishable from Plaintiff's claim (and this Court's prior decision).  In *Ford Ignition Switch*, the Court dismissed a claim of breach of implied warranty when the defect in the ignition switch had never manifested – the cars worked fine.  *In re Ford Co. Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317 *22 (D.N.J. Sept. 30, 1997).  Plaintiff has developed mold and mildew in her washing machine which renders it unmerchantable.  In *Jakubowski*, failure of an industrial grade abrasive disc caused an injury, but the plaintiff never established that the failure was premature or otherwise the result of the disc being unmerchantable.  *Jakubowski v. Minn. Mining & Mfg. Co.*, 42 N.J. 177, (1964).  In the instant matter, it can hardly be said that washing machines are expected to develop ineradicable mold and mildew within a year.  In *Toshiba HD DVD*, there was no defect at all at issue, but rather the fact that HD DVDs for such players were no longer to be produced.  *In re Toshiba Amer. HD DVD Mktg. and Sales Practices Litig.*, 2009 WL 2940081 (D.N.J. Sept. 11, 2009).  Here, Plaintiff alleges the existence of a defect that causes the mold and mildew that has grown in her washing machine.  Finally, in *Panasonic*, the plaintiff complained of degradation of a "superior quality image" in a plasma television.  *Hughes v. Panasonic Consumer Elecs. Co.*,

2011 WL 2976839 (D.N.J. July 21, 2011).  Plaintiff is not alleging that her whites just are not made white enough, but rather that mold and mildew in her washing machine is tainting her clothes.  "Plaintiff has stated a claim for breach of implied warranty."  Opinion at 31, *14.

## CONCLUSION

For all of the foregoing reasons, Plaintiff requests that the renewed Motion to Dismiss by Miele be denied in its entirety.

**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO**
Attorneys for Plaintiff and proposed Class

By: _____/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated:  July 31, 2012

Jonathan Shub
**SEEGER WEISS LLP**
1515 Market St., Suite 1380
Philadelphia, PA 19102
(215) 564-2300

Jamie E. Weiss
Julie D. Miller
Richard J. Burke
COMPLEX LITIGATION GROUP
513 Central Avenue, Suite 300
Highland Park, Illinois  60035
(847)433-4500