**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAISY MONTICH, individually and on behalf of all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> MIELE USA, INC., <br><br> Defendant. | Civil Action No. 11-2725(MAS)(DEA) |

-------------------------------------------------------------------------------------------------------------------

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION**
**TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**

-------------------------------------------------------------------------------------------------------------------

Jonathan Shub
Scott Alan George
**SEEGER WEISS LLP**
1515 Market St., Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 569-1606

Jamie E. Weiss
Julie D. Miller
**COMPLEX LITIGATION GROUP**
513 Central Avenue, Suite 300
Highland Park, Illinois  60035

James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI, OLSTEIN,**
**BRODY & ANGELO, P.C.**
5 Becker Farm Road
Roseland , New Jersey 07068
Telephone (973) 994-1700

Richard J. Burke
**COMPLEX LITIGATION GROUP**
1010 Market Street, Suite 1340
St. Louis, Missouri  63101

*Attorneys for Plaintiff and the Proposed Class*

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ........................................................................................ 1

II. LEGAL ARGUMENT ................................................................................................. 6

   A.  PLAINTIFF HAS FULLY ALLEGED ACTIONABLE CONSUMER FRAUD CLAIMS6

     1.  Plaintiff has Alleged, Verbatim, Defendant's Actionable Misrepresentations, Fully Satisfying Rule 9(b)............................................................................................................ 6

     2.  Defendant's Scienter Is Adequately Alleged for the Purposes of Rule 8 ........................ 9

     3.  Defendant's Misrepresentations are Actionable, Not Idle Puffery ............................... 12

     4.  Defendant's Failure to Disclose the Defect is Actionable and Adequately Alleged ..... 14

   B.  PLAINTIFF HAS ALLEGED A VIABLE CLAIM FOR UNJUST ENRICHMENT...... 17

     1.  Plaintiff's Unjust Enrichment Claim is Not Barred by the Limited Warranty............... 17

     2.  Plaintiff May Proceed with Her Claim of Unjust Enrichment Under Either New Jersey or California Law – Privity is Not Required ......................................................................... 20

     3.  If a Conflict Exists Between the Laws of New Jersey and California, California Law Should Apply ........................................................................................................................ 24

   CONCLUSION.................................................................................................................... 27

i

# TABLE OF AUTHORITIES

## CASES

*Ally Bank v. Castle*, 2012 WL 3627631 *5 (N.D.Cal., Aug. 20, 2012)........................................ 11

*Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133 (C.D.Cal. 2005)............................................ 13

*Ardente v. Shanley*, 2010 WL 546485 * 3 (N.D.Cal., Feb. 10, 2010) ........................................... 11

*Benefit Trust Life Insurance Co. v. Union National Bank of Pittsburgh,*
   *776 F.2d 1174* (3d Cir. 1985)................................................................................. 20

*Butler v. Sears, Roebuck and Co.*, 2009 WL 3713687 (N.D. Ill. 2009) ......................................... 1

*City of Oakland v. Comcast Corp.*, 2007 WL 518868 * 4 (C.D.Cal. Feb. 14, 2007) ................... 22

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1998)........................................................................... 10

*CTC Real Estate Svcs v. Lepe*, 140 Cal.App.4th 856, 44 Cal.Rptr.3d 823 (2006) ...................... 22

*Daugherty v. American Honda Motor Co.*, 144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (2006)..... 16

*Doe v. Wal-Mart Stores, Inc.*, 572 F.3d 677 (9th Cir. 2009) ....................................................... 22

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)..................................................................... 23

*Falk v. General Motors Corp.*, 496 F.Supp.2d 1088 (N.D.Cal. 2007) ........................................ 15

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ................................................................................... 6

*Ghirado v. Antonioli,* 14 Cal.4th 39, 50, 57 Cal.Rptr. 2d 687 693 (1996) ................................... 21

*Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703 (C.D.Cal. Jan. 23, 2012) ................. 15, 16

*Guidance Endontics, LLC v. Dentsply Intern., Inc.*, 2011 WL 1336473
   (D.N.M. Mar. 31, 2011) ............................................................................................. 14

*Harper v. LG Electronics USA, Inc.*, 595 F. Supp. 2d 486 (D.N.J. 2010)...................................... 1

*Howl v. Bank of America, N.A.*, 2011 WL 3610745 *3 (N.D.Cal., Aug. 17, 2011) ..................... 11

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) .................................... 19

*In re Cardizem CD Antitrust Litigation*, 105 F.Supp.2d 618 (E.D.Mich. 2000) ......................... 21

*In re Easysaver Rewards Litig.*, 737 F.Supp.2d 1159 (S.D.Cal. 2010) ........................................ 20

*In re Ferrero Litigation*, 2011 WL 5438979 ** 2-3 (S.D. Cal.  Aug. 29, 2011)............................ 8

*In re Ford Motor Co. E-350 Van Products Liability Litigation (No. II),*
   2010 WL 2813788 (D.N.J. 2010)................................................................................. 20

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994)....................................................... 11

*In re K-Dur Antitrust Litigation*, 338 F.Supp.2d 517 (D.N.J. 2004) ........................................... 20

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
   758 F.Supp.2d 1077 (S.D.Cal. 2010).......................................................................... 11

*In re Tobacco II Cases*, 46 Cal.4th 298, 207 P.3d 20 (2011) ........................................................ 8

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F.Supp.2d 942 ................. 1

*In re: Simply Orange Juice Marketing & Sales Practices Litig.*, 2013 WL 781785 (W.D.Mo.
   March 1, 2013) ............................................................................................................ 8

*Johns v. Bayer Corp.*, 2010 WL 476688 (S.D.Cal., Feb. 9, 2010) .............................................. 11

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ..................................................... 8, 15

ii

*Kossian v. American Nat'l Ins., Co.*, 254 Cal.App.2d 647, 62 Cal.Rptr. 225 (5th Dist. 1967) ..... 22

*LiMandri v. Judkins*, 52 Cal.App.4[th] 326, 60 Cal.Rptr.2d 539 (1997) ......................................... 16

*McKell v. Washington Mut., Inc.*, 142 Cal.App.4[th] 1457, 49 cal.Rtpr.3d 227 (2006) ................. 21

*Minard v. Iazzetti*, 2007 WL 4208836 (D.N.J. Nov. 26, 2007) ...................................................... 6

*Minnesota Life Ins. Co. v. Philpot*, 2013 WL 100947 * 5 (S.D.Cal. Jan. 7, 2013) ..................... 19

*MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F.Supp.2d 729 (D.N.J. 2008) ................... 20

*Montich v. Miele USA, Inc.*, 849 F.Supp.3d 439 (D.N.J. 2012) ........................................... passim

*Morgan v. AT & T Wireless Services, Inc.*, 177 Cal.App.4th 1235,

99 Cal.Rptr.3d 768 (Cal.App. 2 Dist., 2009) ................................................................ 8

*O'Shea v. Epson America, Inc.*, 2011 WL 3299936 (C.D.Cal. July 29, 2011) ........................... 16

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) .................................................. 11

*Ostereicher v. Alienware Corp.*, 544 F.Supp.2d 964 (N.D.Cal. 2008) .................................. 10, 16

*P.V. v. Camp Jaycee*, 197 N.J. 132 (2008) .................................................................. 25

*Pauly v. Houlihan's Restaurants, Inc.* 2012 WL 6652754, at *3 (D.N.J. 2012) .......................... 20

*Reed v. Carter-Reed Co., LLC*, 203 N.J. 496 (2010) ....................................................... 23

*Rice v. Sunbeam Prods, Inc.*, 2013 WL 146270 ** 7, 10 (C.D.Cal., Jan. 7, 2013) ..................... 12

*Rubuin v. Trimble*, 1997 WL 227956 *7 (N.D.Cal., Apr. 28, 1997) .......................................... 11

*Shersher v. Superior Court,* 154 Cal.App.4th 1491, 65 Cal.Rptr.3d 634 (Cal.Ct.App.2007) ...... 22

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) ............................... 12, 14

*Stewart v. Beam Global Spirits*, 877 F.Supp.2d 192 (D.N.J. 2012) ......................................... 23

*Tait v BSH Home Appliances Corp.*, 2011 WL 3941387 (C.D. Cal. Aug. 31, 2011) ..................... 1

*Tietsworth v. Sears, Roebuck and Co.*, 2009 WL 3320486 (N.D.Cal. Oct. 13, 2009) ................. 14

*Tietsworth v. Sears, Roebuck and Co.,* 720 F.Supp.2d 1123 (N.D.Cal.2010) ............................ 22

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539 (1994) ..................................................... 23

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987) ......................................... 11

## STATUTES

California Business and Professions Code §17200, *et seq.*.............................................................4

California Business and Professions Code §17500, *et seq.*..........................................................4, 9

Cal. Comm. Code. §2313...............................................................................................................9

Cal. Civ. Code §1668 ....................................................................................................................9

Cal. Civ. Code §1710.....................................................................................................................9

Fed.R.Civ.P. 8(d)..........................................................................................................................19

Fed.R.Civ.P. 9(b)...................................................................................................................passim

Fed.R.Civ.P. 12(f).........................................................................................................................7

Restatement (Second) Conflict of Laws §188..............................................................................26

Restatement (Second) Conflict of Laws §221.........................................................................25, 26

## PRELIMINARY STATEMENT

The core question presented in the pending Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) ("Motion") is whether Defendant Miele U.S.A, Inc.. ("Defendant" or "Miele") is sufficiently on notice as to the nature of its fraud against consumers. The Second Amended Complaint ("Complaint" or "SAC") recites, verbatim, what Miele told Plaintiff Daisy Montich about Miele's front-loading washing machines when she was shopping for a new washing machine, statements upon which Ms. Montich made her decision to purchase a Miele machine. Miele's contention that Plaintiff has not properly pleaded her claims is based upon ignoring the well-pleaded allegations in the Complaint, which demonstrate that Miele's representations about its front-loading washing machines were deceptive.[1]

As has been presented to the Court at greater length in earlier briefings, the defect at issue in this case is simple. Defendant sells high-end front loading washing machines which promise efficiencies in operation, but which develop ineradicable mold and mildew which taints clothing.

---

[1] There are at least four other actions pending against other manufacturers of FLWs in various district courts around the country, including in this Court, involving virtually identical factual allegations and causes of action. *Harper v. LG Electronics USA, Inc.*, Civil Action No. 08-51(FSH) (D.N.J. filed Feb. 28, 2008); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig*., Case No. 08-wp-65000, MDL No. 2001 (N.D. Ohio filed June 19, 2008); *Butler v. Sears, Roebuck and Co.*, Case No. 06 C 7023, 07 C 412 and 08 C 1832 (N.D. Ill. filed Jan. 23, 2007); *Tait v. BSH Home Appliances Corp*., Case No. SACV 10-00711 DOC (ANx) (C.D. Cal. filed July 22, 2010). Each of those cases has survived nearly identical Rule 12 motions. *Harper v. LG Electronics USA, Inc.*, 595 F. Supp. 2d 486, 490-91 (D.N.J. 2010) (hereinafter, the "*LG Decision*"); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig*., 684 F.Supp.2d 942 (N.D. Ohio 2009); *Butler v. Sears, Roebuck and Co.*, 2009 WL 3713687 (N.D. Ill. 2009); *Tait v. BSH Home Appliances Corp.*, 2011 WL 3941387 (C.D. Cal. Aug. 31, 2011). All have long proceeded to active discovery, and most have been certified as class actions, including reversal by the Seventh Circuit (under Judge Posner) of the trial court's initial denial of class certification in *Butler* and affirmation of class certification in *Whirlpool* which is preparing for a class trial. *Butler*, 702 F.3d 359 (7th Cir. 2012) (Posner, J.); *Whirlpool*, 678 F.3d 409 (6th Cir. 2012); *Tait*, --- F.R.D. ---, 2012 WL 6699247 (C.D.Cal. Dec. 20, 2012) (granting motion for class certification)

Because the problem typically does not become apparent until after the warranty lapses, and Defendant has no real fix to offer for the defect, Defendant instructs consumers to run empty cycles, defeating the promised efficiencies of the machine. Defendant is not controverting the existence of this defect or Ms. Montich's experience for the purposes of the present Motion. Rather, the focus is solely on what Miele said about its machines.

In her Second Amended Complaint, Ms. Montich details the research she completed *prior* to purchasing the Miele machine: internet research from Miele's website and a visit to the retailer show room. SAC, ¶ 27. She also details, quoting at length and verbatim, what Miele said on its website about, among other things the quality of its machines, its energy efficiency, the conservation of natural resources such as water, that the "key job[ ] of a washing machine [is] to clean and care for your clothing." *Id.*, ¶ 12, 13. At length, Ms. Montich now alleges verbatim what Miele said:

9.      Defendant translated its trademark "Immer Besser" (literally "Forever Better"), for the American market as "Anything else is compromise." This was to be no hollow or singular boast, but rather amplified by the purported qualities of the award-worthy appliances it designed and manufactured.

10.     As Miele has stated in its American marketing materials since late 2006 or early 2007, which Ms. Montich observed and relied upon, including its website: "more than 14,000 employees of Miele are motivated to produce products that are not only high performing, safe and easy to use, but also made to the highest quality standards and from the best raw materials. These ingredients are critical, for our mission is to create products that customers will enjoy for a lifetime of use with confidence and reliability. At the very core of Miele's technical and production competencies are washing machines. Having more experience than almost any other appliance company on the planet, Miele has taken the washing machine . . . around the world to the highest level of durability, reliability and convenience while always remembering the product's potential impact on our cherished natural resources. With these factors in mind, Miele creates the ultimate fabric care system that cleans and protects clothing better than any other. Guaranteed."

2

12.    As Miele recites on its United States website, and echoed in other marketing materials including those available at the shop floor, since late 2006/early 2007:

> "Today, this family owned and operated company continues to innovate to make products that are built to last and made to outperform any other. The revolutionary Honeycomb™ drum represents Miele's latest advancement in at-home fabric care. Among the many benefits in this **quantum leap of technology** include:
>> Even better washing results
>> Considerably lower water consumption and
>> A longer life span of your clothing given its gentle handling
> of garments."

> "Cleaning Performance That Will Make Your Dry Cleaner Envious . . . Over the past 10 decades, Miele has conducted volumes of research in the field of fabric care, but in the United States and in countries all around the world.  After sifting through all this data, the key requirement for in-home fabric care are collected in the following categories:
>> Ultimate cleaning performance
>> Easy-to-use and maintain
>> Quality and longevity of product and your clothing
>> Eco-friendly
>> Brand you can trust
>> At the end of it all, the key jobs of a washing machine are
> to clean and care for your clothing."

> "What Does This [the Miele technology] Mean to You and Your Family? . . . there is virtually no chance your clothes will be damaged . . . . An independent study . . . proves that your valuable wardrobe will be cleaner and last up to **four times longer** if cared for in a Miele."

> "Environmental Commitment. . . It's OK to be 'Green' . . . Your children's children will thank you . . . . Our research and development teams are constantly striving to improve the performance of our appliances and the manner in which they are manufactured.  In so doing, we ensure that raw materials, energy, water and other natural resources are used sparingly.  These high standards, set for ourselves . . . allowed Miele to become the first appliance manufacturer in the world to gain certification to the stringent International Environmental Standard DIN EN ISO 14001.  From your household operations standpoint, every Miele washing machine qualifies for the Energy Star Program; supported

> by local utility companies to help reward owners of high-efficiency appliances. As a matter of fact, Miele has one of the most efficient washing machines on the market, using as little as 7.8 gallons of water per load. Cleaner clothes and lower utility bills – a perfect match for anyone."
>
> The benefits of Miele's "Clean and Sanitize" function which is supposed to recognize that nothing gets "closer to your skin" than your clothes, and is said to eliminate contaminates like "bacteria, fungus spores and viruses."

13. Similarly, in several of Miele's advertisements the quality of the washing was singled out, a wedding gown or similarly important and delicate garments are shown emerging from a Miele washing machine as clean as the wedding day on which it was worn or protecting the body of the owner of a Miele machine.

What Miele has never taken responsibility for to Ms. Montich or the other members of the putative class, is that the problem arises from a defect in the machine. Miele instructs users, like Ms. Montich, to run empty cycles and use a special treatment, but never endeavors to remedy the underlying defect. The mold and mildew, like the defect, is not eliminated by this wasteful routine.

Based on such facts, Ms. Montich seeks relief under four causes of action. Based on the earlier ruling of the Court in *Montich v. Miele USA, Inc.*, 849 F.Supp.3d 439 (D.N.J. 2012) ("*Montich I*"), that California law governs Ms. Montich's consumer fraud claims, Counts One and Two allege violations of California Business and Professions Code §§ 17200, *et seq.*, (Unfair Competition Law or "UCL") and 17500, *et seq.* (False Advertising Law or "FAL"). Under Count Three, Ms. Montich seeks relief for Miele's breach of implied warranty of merchantability based on the mold and mildew accumulation, which Defendant does not seek to dismiss in its present motion (having had its two earlier efforts to do so rebuffed by the Court). Under Count Four, Ms. Montich seeks, as an "alternative count", disgorgement of Miele's profits as part of its unjust enrichment.

4

In support of its current Motion, Defendant argues that the requirements of Rule 9(b) are not satisfied by the allegations of what it said in its marketing materials, necessitating dismissal of both the consumer fraud causes of action as well as unjust enrichment. Importantly, it avoids the verbatim recitation of what it said in its website to make this argument. As to the consumer fraud claims, Defendant further argues that "scienter" is not adequately alleged, that its statements are sufficiently vague or exaggerated as to amount to sales puffery, and that it had no obligation to tell consumers about the defect. However, "scienter" is a creature of common law fraud ill-fitted to remedial statutory schemes like California's FAL and UCL and may be simply and succinctly plead. Similarly, the overlapping nature of Defendant's misrepresentations (the machine cleans and is efficient) and what it concealed (a defective machine that taints clothes with mildew and wastes resources) creates a duty to disclose.

Regarding the unjust enrichment, Defendant continues to argue that New Jersey law should apply to Ms. Montich, although her being resident in California lead the Court to find that California's laws should govern her consumer fraud claims and was the basis for Miele's earlier argument that California law should apply to both her consumer fraud and warranty claims. Further, Miele argues that the existence of a warranty dooms such claims, and that the mere fact that Ms. Montich purchased at retail (and is not in immediate privity with Miele), precludes her claims against Miele. However, Miele's limited warranty does not cover mold and mildew, and it is Miele, not any retailer, who misrepresented Miele's machine.

As will be shown, none of Defendant's arguments should be credited, and its Motion should be denied in its entirety.

5

## LEGAL ARGUMENT

A.    **PLAINTIFF HAS FULLY ALLEGED ACTIONABLE CONSUMER FRAUD CLAIMS**

      1.    **Plaintiff has Alleged, Verbatim, Defendant's Actionable Misrepresentations, Fully Satisfying Rule 9(b)**

The only amendments necessitated by the prior briefing and related orders relate to the adequacy of the allegations about what Miele said about its machines for the purposes of Rule 9(b).[2] At each prior junction, Ms. Montich added new descriptions about what had been said, but never quoted any statements. As set forth at length above, Ms. Montich now recites, verbatim, the statements Miele made in its website at and around the time she was researching what washing machine to purchase. This was the primary source for the information she used when she decided to purchase a Miele. However, she also states that she saw the same statements in other Miele marketing materials and heard the same things from the sales staff at Ferguson's where she ultimately purchased her Miele machine:

> 27.    Ms. Montich and/or her husband researched the Miele machine. Based on this research, including Miele marketing materials available on the showroom floor and the Miele United States website, Ms. Montich read the statements outlined above (*i.e.*, ¶¶ 10-13) and was lead to believe that Miele was a top-of-the-line manufacturer of reliable appliances and that the Miele machine would conserve water and energy, was eco-friendly, and would protect and ensure a long, useful life for her clothes and the clothes of her family. When she visited a retail showroom, the same messages and statements were echoed by sales staff.

---

[2]    If Defendant's Motion is granted in whole or in part, Plaintiff should be "freely given" the opportunity to amend so that she is "afforded an opportunity to test [her] claims on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Minard v. Iazzetti*, 2007 WL 4208836 (D.N.J. Nov. 26, 2007) (permitting Third Amended Complaint). Defendant is not challenging the adequacy of Ms. Montich's verbatim recitation of Defendant's statements on its website. The adequacy of the pleading of the actionable statements by Defendant is the only matter that has been determined by the Court to date. The remaining matters at issue in the pending Motion are either unique to the present Motion or argued, but not decided, in prior briefing.

Defendant does not challenge the adequacy for the purposes of Rule 9(b) of the allegations where Ms. Montich quotes from its website. Instead, it engages in scrutiny of the allegations about the other marketing materials and the statements "echoed by the sales staff" to argue that her complaint is still deficient. SAC ¶ 28. Given the verbatim recitation of Miele's statements on its website, Miele is fully and precisely apprised of what it said to Ms. Montich. The purposes of Rule 9 are satisfied, and Ms. Montich should be permitted to commence discovery regarding her consumer fraud claims.

Some of the deficiencies it claims about the allegations about its other marketing materials and the statements by the sales staff at Fergusons can hardly countenance any concern at this stage:

- *Who* wrote Miele's marketing materials, which is a matter uniquely in Miele's and/or other person's knowledge. All that matters for present purposes is that it was Miele's marketing materials.

- *When* exactly she saw the website and other materials before she made her purchase, when all that is material is that these materials were consulted prior to her purchase.

- With *whom* she spoke at Fergusons who made statements like those on the website is likewise irrelevant, since that person was simply parroting the same information contained in Miele's marketing materials.

Some of these matters may be developed through discovery, and others are actually not material. Indeed, given the fact that the claims based on the website are unchallenged, Defendant is not properly arguing a motion to dismiss, but rather an ill-conceived motion to strike certain allegations[3] or some preemptive motion *in limine* to preclude certain evidence.

---

[3]    There would be no basis for such a motion. Fed.R.Civ.P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.")

Moreover, such allegations are sufficient under Rule 9. Guiding the Court's decision in *Montich II* was the Ninth Circuit's decision in *Kearns*, where the time and substance of the statements made was merely sketched out. *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009). Here, however, Ms. Montich provided Miele with its verbatim statements, which were repeated and echoed in its marketing materials and by the sales staff at Fergusons. Indeed, even standing without reference to the verbatim statement, these allegations are sufficient. It is not necessary that the misrepresentations be predominant or a decisive factor in making the purchasing decision, so long as they were a substantial factor. *In re Tobacco II Cases*, 46 Cal.4th 298, 327, 207 P.3d 20, 39 (2011).

> Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question', and as such materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.'

*Id.* Where claims are based on what would be part of a national marketing campaign "the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *Id.*, 46 Cal.4th at 328, 207 P.3d at 40.; *In re Ferrero Litigation*, 2011 WL 5438979, at * 2-3 (S.D. Cal. Aug. 29, 2011); *Morgan v. AT & T Wireless Services, Inc.*, 177 Cal.App.4th 1235, 99 Cal.Rptr.3d 768 (Cal.App. 2 Dist., 2009); *cf. In re: Simply Orange Juice Marketing & Sales Practices Litig.*, 2013 WL 781785, at *3 (W.D.Mo. March 1, 2013) (in "extensive and long term advertising campaign, reliance on individual advertisements is not required.")

For the purposes of the Motion and Rule 9, Ms. Montich recites what Miele said that led her to purchase a Miele, which was defective. Defendant's Motion should be denied.

**2.      Defendant's Scienter Is Adequately Alleged for the Purposes of Rule 8**

Defendant also argues that "scienter" is an element of Plaintiff's consumer fraud claims and must not only be alleged, but must be so to the same heightened degree as the other elements of fraud. This is not the law. Ms. Montich alleges that Defendant knew and should have known about the defect in her machine not only because it designed the machine, but it had received "a significant number of complaints regarding . . . . mold and mildew." SAC ¶¶ 17, 18. Indeed, Miele presents itself in its website (as quoted above) as a company engaged in an on-going process of testing and developing its products. Whereas Ms. Montich could only discover the defect after she purchased and used her machine, Defendant was in the far superior position of knowing about the performance of its machines not only in its testing facilities, but also as it gathered information from consumers making complaints and service calls.

Initially, the nature of scienter underpinning plaintiff's consumer fraud claims is different from common law fraud to the extent it is even an element at all. For example, the FAL does not merely prohibit the dissemination of false or misleading statements which the defendant knew to be false or misleading, but also allows claims to be based on statements a defendant "should have known" were false or misleading. Cal. Bus. & Prof. Code § 17500. Similarly, Ms. Montich's claims under the UCL are not only based on the FAL, but also on statutes that do not require knowledge such as Cal. Civ. Code § 1668 (negligence standard) and §1710 ("no reasonable grounds" to believe something is true). Indeed, her UCL claims are also based on provisions that do not even require any examination of Defendant's state of mind, only what it did, such as Cal. Comm. Code. § 2313 (creation and breach of warranty by statement) and Cal. Civ. Code § 1668 (negligent contracting to avoid liability for acts).

Secondly, to the extent scienter is relevant, there is no heightened pleading standard; allegations of scienter need only satisfy the ordinary standards of notice pleading. Recognizing that matters like "knowledge" and "intent" are nearly impossible to allege without the benefit of discovery, the Rules expressly carve out such matters from the heightened pleading requirements of Rule 9(b): "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). This is precisely what the District Court case cited at the outset by Defendant states:

> Finally, a plaintiff seeking to state a claim for fraud must also plead knowledge of falsity, or scienter. The requirement for pleading scienter *is less rigorous than that which applies to allegations regarding the "circumstances that constitute fraud"* because Rule 9(b) states that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Nonetheless, nothing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to "set forth facts from which an inference of scienter could be drawn.

*Ostereicher v. Alienware Corp.*, 544 F.Supp.2d 964, 968 (N.D.Cal. 2008) (emphasis added; internal citations omitted).

As the Ninth Circuit held in *Cooper* and *GlenFed* (the cases relied on by *Ostereicher*) the lack of "rigor" or the fact that "particularized facts" are not needed when pleading matters like scienter is just notice pleading. In *Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1998), the defendant argued like Defendant in this case, that the plaintiff must allege, with particularity, matters such as when it knew the truth and how it knew the truth. *Id.* at 628. Rejecting this requirement, the Court of Appeals stated simply that "[t]his amounts to an argument that scienter, not falsity, must be plead with specificity. *GlenFed I* is to the contrary." *Id.* To hold otherwise "would ignore Rule 9(b)'s simple statement that 'knowledge . . . may be averred generally.'" *Id.*

Similarly *GlenFed I* rejected any pleading standard that could be described as a heightened "strong inference" or even a "some inference" showing of scienter because any

heightened requirement for pleading states of mind are expressly disavowed by Rule 9(b). *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1546(9th Cir. 1994). Indeed, *GlenFed* stated succinctly that "nothing in the court's observation [in an earlier case] precluded plaintiff, on remand, from averring knowledge 'generally.'" *Id.* at 1546, n. 6. As reiterated by the Ninth Circuit subsequently: "While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind or scienter of the defendant may be alleged generally." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007). Applying such clear precedent, Courts have stated that "scienter may be alleged simply by saying that scienter existed." *Howl v. Bank of America, N.A.*, 2011 WL 3610745 *3 (N.D.Cal., Aug. 17, 2011); *Rubuin v. Trimble*, 1997 WL 227956 *7 (N.D.Cal., Apr. 28, 1997); *see also Ardente v. Shanley*, 2010 WL 546485 * 3 (N.D.Cal., Feb. 10, 2010); *Ally Bank v. Castle*, 2012 WL 3627631 *5 (N.D.Cal., Aug. 20, 2012) (citing *Twombly*). Put another way, "[a]llegations of fraud based on information and belief usually do not satisfy the particularity requirements of Rule 9(b); *however*, as to matters [like scienter] peculiarly within the opposing party's knowledge, allegations based on information and belief may satisfy Rule 9(b) if they also state the facts upon which the belief is founded." *Howl*, 2011 WL 3610745 * 3 (citing *Wool v. tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987) (emphasis added).

The other District Court cases appear to run afoul of such directive. Initially, each demands "particularized" allegations regarding the defendant's scienter. Moreover, the particularized facts that were alleged did not reasonably support scienter.[4] In *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F.Supp.2d 1077, 1090 (S.D.Cal. 2010); *Rice v. Sunbeam Prods, Inc.*, 2013 WL 146270 ** 7, 10 (C.D.Cal., Jan. 7,

---

[4]   Scienter was not at issue or analyzed in *Johns v. Bayer Corp.*, 2010 WL 476688 (S.D.Cal., Feb. 9, 2010).

2013) (expressly referring to Rule 9(b) pleading standards).   In *Sony*, allegations regarding earlier design issues did not fit the defect being litigated.   758 F.Supp.2d at 1090.  Similarly, *Sunbeam* made only general allegations about customer complaints, but not the substance of such complaints.   In contrast, Ms. Montich states that Defendant received complaints about "in particular, problems regarding mold and mildew" and, additionally, had greater knowledge about the underlying design, and design infirmities, of the machines.   SAC ¶¶ 17, 18.   Such allegation "suggest the required element" in satisfaction of Rule 8.

### 3.      Defendant's Misrepresentations are Actionable, Not Idle Puffery

Turning finally to what it actually said to Ms. Montich and others in its website, Miele argues that none of what it said is actionable because what it said is puffery.  It can neither be true nor false.  Under such an argument, Miele could have recited all that it did in its webpage, including the precise quantitative claims, sell instead a scratch-and-dent machine with a warranty and still claim "puffery."  Obviously, that is not what the law provides.  "Puffing is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).   Thus, while "product superiority claims that are vague or highly subjective often amount to nonactionable puffery, . . . "misdescriptions of specific or absolute characteristics of a product are actionable."  *Id.* (citations and quotations omitted).

To support its motion, Defendant focuses almost exclusively on isolated bald assertions, like its company motto or claims of "high or superior quality."   While these matters provide a backdrop to the actionable statements, and certainly lend credence to Ms. Montich trusting that Miele would live up to its reputation and know about a defect, they are not the basis for Ms. Montich's claims of misrepresentation.   Rather, Ms. Montich is basing her claims on those

statements which have turned out to be false in her experience and because of the defect. Accordingly, the truth or falsity of Defendant's representations can and will be "established or disproved through discovery, and hence [are] not mere puffery." *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1140-41 (C.D.Cal. 2005). Indeed, many of the statements made by Miele are literally false, leaving no room for a claim of puffery.

Contrasting what Ms. Montich purchased with what Miele promised is illustrative of "precise and actionable statements." Ms. Montich purchased a machine which has developed ineradicable mold and mildew which taints her clothing with such smells and requires that she run empty cycles. However, Miele promised:

- "Miele creates the ultimate fabric care system *that cleans and protects clothing. . . . Guaranteed.*"

- *"Even better washing results . . . Considerably lower water consumption . . . A longer life span for your clothing."*

- *"eliminates contaminates like 'bacteria, fungus spores and viruses."*

- "there is virtually *no chance your clothes will be damaged . . .* your valuable wardrobe will be *cleaner.*"

- "Miele has one of the most efficient washing machines on the market, using as little as 7.8 gallons of water per load. *Cleaner clothes* and *lower utility bills.*

- Based upon "volumes of research  in the field of fabric case, . .. in the United States, the key requirements for in-home fabric care are collected in the following categories:

  o Ultimate *cleaning* performance
  o *Easy-to-use and maintain*
  o Quality and longevity of produce and your clothing
  o *Eco-friendly*"

Ms. Montich did not buy her machine based on empty brags of "bests" and "betters." Ms. Montich was promised clean, she got mold and mildew. Ms. Montich was promised a

13

machine that would eliminate contaminants, she got mold and mildew. Ms. Montich was promised easy maintenance, she has to run empty cycles. Ms. Montich was promised eco-friendly and efficiency, she has to run wasteful empty cycles. Such statements are actionable. *See e.g. Guidance Endontics, LLC v. Dentsply Intern., Inc.*, 2011 WL 1336473 (D.N.M. Mar. 31, 2011) (finding that "'[e]fficient, safe and flexible,' are statements of fact.") Ms. Montich's claims are not based only on generally verifiable statements, but also quantifiable ones. Miele stated that its machine uses as little as 7.8 gallons of water per load. Not only is this statement easily refuted or verified as a general matter, but the empty cycles Ms. Montich and other owners must run because of the defect, will certainly not be part of Miele's calculated promise, making 7.8 gallons in "as little as" that Ms. Montich will never realize with her Miele.[5]

## 4. Defendant's Failure to Disclose the Defect is Actionable and Adequately Alleged

Defendant also seeks dismissal of any claims relating to its concealment of, or its failure to disclose, the defect. First, it continues its argument that Ms. Montich's fraud allegations fall short of Rule 9(b). Second, it argues that a duty to disclose arises only when the omission relates to a matter related to safety, which is not the case here.

First, details regarding Defendant's omissions run throughout the detailed statements Defendant made that concealed the mold and mildew defect. It said one thing specifically, and

---

[5]     Miele purports to render such a precise measurement into "puffery" as well with reference to *Tietsworth v. Sears, Roebuck and Co.*, 2009 WL 3320486 (N.D.Cal. Oct. 13, 2009). While *Tietsworth* also involved a front-loading washing machine, the defect and the quantified promise were different. The defect did not involve mold and mildew accumulation, but rather a circuit board that would fail and stop the washing machine from operating. The quantified promise was: "using 47% less water ad 53% less energy." *Id.* at * 7, n. 5. The Court noted that such a measure had no relevance to the defect alleged in that case. Further, the court concluded that such a measure was puffery because it makes no absolute, but only an unverifiable, relative measure. However, such relative measures can be actionable (*Southland Sod*, 108 F.3d at 1145. Of course, Miele makes a clear statement of efficiency (7.8 gallons), without reference to any other machine or standard

14

omitted another specific fact distinctly.  Moreover, even when Miele was contacted by Ms. Montich and others, Defendant continued to actively deny that any defect existed or offer any repair of that defect.  Instead, Defendant instructed Ms. Montich to use a "descaler" and run empty cycles, a process that should be carried out on a recurring basis.  SAC ¶ 31.  Such details exceed the conclusory allegations of concealment in *Kearns*, 567 F.3d 1120 and *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703 (C.D.Cal. Jan. 23, 2012).

As regards to Defendant's duty to speak honestly to a California resident, the law requires that if a person speaks, he must tell the complete truth, not only half of the truth. California law is a little more complicated and protective of consumers than Defendant allows. There is a split in authorities: one line of authorities allows for a duty to disclose in four situations, and the other line is more conservative, and provides for a duty in only two circumstances.  *See Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703 *4 (C.D.Cal. Jan. 23, 2012).   Under either line of authority, Defendant has a duty to disclose the problem with its machines.  There is no requirement under this line of authority, that the facts implicate safety issues.  *See e.g. Gray*, 2012 WL 313703 *3-4.  Indeed, such a requirement of a safety issue would effectively mean that, despite a recognized split in authority, there was actually no difference between these two lines of authority.

Under the first line of cases, a duty to disclose exists in four situations: (1) when the defendant has a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material facts.  *Falk v. General Motors Corp.*, 496 F.Supp.2d 1088, 1095 (N.D.Cal. 2007) (citing *LiMandri v. Judkins*, 52 Cal.App.4th 326, 337, 60 Cal.Rptr.2d 539

15

(1997)).  While there is no fiduciary relationship between Plaintiff and Miele, the other three situations are present.  Miele had exclusive knowledge of material facts not known to Plaintiff.  SAC ¶ 20.  Miele actively concealed the defect, even when contacted by Plaintiff (and others).  *Id.* ¶¶ 13, 16, 22.  Defendant promised water and energy efficiency, yet to conceal the defect, recommended that Plaintiff run empty wash cycles when she contacted Miele directly about the mold and mildew problem.  *Id.* ¶¶ 15, 19, 22.

Under the second line of authority, which Defendant prefers, a duty to disclose a material fact arises in two circumstances: (1) the omission is contrary to a representation made by the defendant; or (2) the omission pertains to a fact the defendant was otherwise obligated to disclose, such as a safety issue.  *See Oestreicher v. Alienware Corp.*, 544 F.Supp.2d 964, 969 (N.D.Cal. 2008) (citing *Daugherty v. American Honda Motor Co.*, 144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (2006)).[6]  Here, Defendant promised one thing, but the undisclosed defect took it away.  For example, Defendant promised water and energy efficiency, but required that purchasers run empty wash cycles to deal with the mold and mildew created by the defect.  Similarly, Defendant promised outstanding cleaning, but delivered a washing machine that quickly develops ineradicable mold and mildew.  In contrast, the cases cited by Defendant, do not have contrasting representations.  Rather, they were either pure omissions cases (*Gray*, 2012 WL 313703), implicated truthful representations about product components (*Oestreicker*, 544 F.Supp.2d 964) or involved representations that were truthful disclosures of standard test results (such as EPA mileage tests (*Gray*) or continual print yield tests (*O'Shea v. Epson America, Inc.*, 2011 WL 3299936 (C.D.Cal. July 29, 2011)) with no promises about the actual results consumers should expect.

---

[6]   The latter circumstance is tautological in that it imposes a duty to disclose materials that one has a duty to disclose.

**B.    PLAINTIFF HAS ALLEGED A VIABLE CLAIM FOR UNJUST ENRICHMENT**

Defendant takes three attacks on Plaintiff's claim for unjust enrichment.  First, Defendant incorporates by reference its argument that the allegations of its misrepresentations falls short of Rule 9(b), and also dooms her claims for unjust enrichment.  Plaintiff will not reiterate her argument here, but affirms that her verbatim recitation of the statements Defendant made on its website are not challenged and more than satisfy Rule 9(b).

Second, Defendant argues that because it issued a Limited Warranty, her claim is barred. However, Plaintiff's theory of unjust enrichment is not contractual in nature, is not covered by the Limited Warranty, and is further pleaded in the alternative.

Finally, Defendant again seeks to argue that New Jersey law should apply to the claims of this California resident, and that New Jersey law requires privity, which Ms. Montich lacks with Defendant.  Not only is Defendant's choice of law analysis flawed[7], but New Jersey law does not require immediate privity, and recognizes an action by a consumer against a manufacturer.

For the reasons that follow, Defendant's Motion should be denied as to Ms. Montich's claim for unjust enrichment.

**1.    Plaintiff's Unjust Enrichment Claim is Not Barred by the Limited Warranty**

Plaintiff is not seeking relief in this action under an express warranty, and, as alleged, would have been effectively precluded from doing so by Defendant's conduct.  Nonetheless, Defendant claims that the mere existence of a contract, like the Limited Warranty it appends to its Motion, precludes any claim for unjust enrichment.  In so arguing, Defendant seeks to introduce, through the self-serving testimony of one of Defendant's executives, Roland

---

[7]    Concededly, the Restatement of Conflict of Laws (Second) provides for a different analysis for unjust enrichment claims than for a consumer fraud claim.  However, Defendant's choice of law analysis appears to be that the law of whichever state allows it to win is the law that will apply.  No such rule appears in the Restatement.

Weingartner, a copy of a Limited Warranty and a screen shot from a computer purportedly about a service call made by Ms. Montich.  There are several problems with Defendant's argument: it misstates the allegations, it relies on documents submitted by Defendant that are not part of the Second Amended Complaint, and it is not supported by law.

First, even assuming all the extraneous facts introduced by Defendant, Plaintiff had no rights under the Limited Warranty that would foreclose her unjust enrichment claim.  Plaintiff alleges that "Within *one year of delivery,* [she] began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on the clothes and other items washed in the Washing Machine"  SAC ¶ 6.  Although she purchased the machine in July 27, 2007, she did not receive the machine until September 25, 2007.  *Id.*  The Limited Warranty that Defendant offers as providing her a repair "free of charge" only provides for a warranty period of  "one (1) year from the *date of purchase*" not the later date of delivery.  Declaration of Roland Weingartner, Exhibit A ("Weingartner Decl.")  Indeed, it is not clear from the face of the complaint when exactly Plaintiff started noticing the problem, but Defendant offers further that the only record it has of contact with Plaintiff after the sale is in October 28, 2010, well after one year of both the purchase and the eventual delivery of the machine.  Weingartner Decl., Exhibit B.  It appears that Plaintiff was never eligible for a "free of charge repair" under the Limited Warranty.

Second, Defendant's argument is based on documents that are not part of the Amended Complaint and should be disregarded.  Defendant offers a document it claims was the type of Limited Warranty extended with washing machines sold during the time Plaintiff purchased her machine and a screen shot of one of Defendant's databases that purportedly relate to Plaintiff. Weingartner Decl.  Plaintiff has no basis to accept the authenticity or accuracy of these documents on Mr. Weingartner's declaration.  Indeed, neither Plaintiff nor the Court have any

understanding of the database from which the screen shot was purportedly made, the possibility that entries in the database are mistaken or missing, or whether other warranties with lesser terms may have been extended at the time, or the way Defendant has interpreted its terms.   Such unauthenticated documents which provide no basis for Plaintiff's claims are not properly considered by the Court on a motion under Rule 12(b)(6).   *See e.g. In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that unauthenticated documents and documents that were not integral or explicitly relied on by a plaintiff are not properly considered at the pleadings stage);   *see generally* Bartkus & Sher, N.J. Federal Civil Procedure, § 7-6:3.3, at 257 (2013).

However, Plaintiff asserts no express warranty claims and practically could not. Defendant has consistently denied the existence of any defect in the machines relating to the accumulation of mold and mildew and would, accordingly, deny any warranty coverage for timely submitted mold and mildew claims, except to recommend running empty wash cycles with a descaler.   SAC ¶¶ 21, 31, 72.   Moreover, Defendant had no fix to offer, and most consumers would not be aware of the mold and mildew problem until after passage of the warranty term.   SAC ¶ 21.   Given the fact that the purported Limited Warranty (even as presented by Defendant) does not govern the claims in this suit (above), there is no impediment to Plaintiff's unjust enrichment claim.

Finally, the law is well-settled that a party may plead alternative theories of recovery for breach of contract and for unjust enrichment.   Fed.R.Civ.P. 8(d) (expressly permitting alternate and inconsistent statements of claims); *Minnesota Life Ins. Co. v. Philpot*, 2013 WL 100947 * 5 (S.D.Cal. Jan. 7, 2013); *In re Easysaver Rewards Litig.*, 737 F.Supp.2d 1159, 1180 (S.D.Cal. 2010); *Pauly v. Houlihan's Restaurants, Inc.* 2012 WL 6652754, at *3 (D.N.J. 2012)(a plaintiff

may plead alternative theories under an express contract and under quasi-contract, but may not recover on both); *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F.Supp.2d 729, 736 (D.N.J. 2008)(citing cases); *In re K-Dur Antitrust Litigation*, 338 F.Supp.2d 517, 544 (D.N.J. 2004).

> 2.    **Plaintiff May Proceed with Her Claim of Unjust Enrichment Under Either New Jersey or California Law – Privity is Not Required**

In *Montich I*, the Court directed the parties to address three points relating to Ms. Montich's claim of unjust enrichment: whether there is a conflict between the laws of California (where Ms. Montich lives) and New Jersey (where Defendant is headquartered), if there is a conflict, which state's law should apply, and whether Ms. Montich has a viable claim under that state's law of unjust enrichment.  *Montich I*, 849 F.Supp.2d at 458-61.  The exclusive concern of the Court was a potential conflict regarding the requirement of privity for a claim of unjust enrichment under New Jersey and California law.  *Id.*  The Court found at that time that New Jersey law required privity, and noted that California law did not appear to, but requested fuller briefing.

"The essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties."  *Benefit Trust Life Insurance Co. v. Union National Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985); *see also In re Ford Motor Co. E-350 Van Products Liability Litigation (No. II)*, 2010 WL 2813788 at \*18 (D.N.J. 2010) (following general unjust enrichment standard. "While for a benefit to be conferred, it is not essential that money be paid directly to the recipient by the party seeking restitution, the benefit must nonetheless be received at the expense of the plaintiff").

> The decisions Defendants rely upon do not support the argument that either privity or a directly conferred benefit is an essential element of an unjust enrichment claim under the state common laws at issue here.  As to the lack of

privity, the decisions Defendants rely upon do not support its position and at least one refutes, rather than supports, the argument that privity between parties is required to state a common law claim for unjust enrichment. Similarly, the authority Defendants' rely upon fail to support their broad claim that Plaintiffs cannot state a common law claim for unjust enrichment unless they allege facts showing that they conferred a benefit directly upon each of the Defendants. Rather, careful examination of the cited authority shows that the courts dismiss such claims only where the plaintiffs fail to allege facts showing that they have bestowed some sort of benefit upon the defendant that the defendant ought not keep in equity and good conscience.

*In re Cardizem CD Antitrust Litigation*, 105 F.Supp.2d 618, 669-71 (E.D.Mich. 2000) (applying general unjust enrichment law)(internal citations omitted).

### a. California Does Not Require Privity

California law does not require privity.[8] *Kossian,* the seminal case holding that strict privity, like that between contracting parties, is not required for an equitable claim of unjust enrichment stated that:

the doctrine recognizes an obligation imposed by law regardless of the intent of the parties. *In these circumstances there need be no relationship that gives substance to an implied intent basic to the 'contract' concept, rather the obligation is imposed **because good conscience dictates** that under the* circumstances the person benefitted should make reimbursement.

*Kossian v. American Nat'l Ins., Co.*, 254 Cal.App.2d 647, 650, 62 Cal.Rptr. 225, 227 (5th Dist. 1967) (emphasis added).

As the Court recognized in its Opinion, such reasoning has been extended to allow retail purchasers to sue manufacturers under California law, even though the manufacturer did not sell

---

[8]    Defendant concedes that unjust enrichment exists, but earmarks some purported doubt about this fact. Def.Br. at 25, n. 6. The Supreme Court of California has squarely held that litigants have the right to seek "relief under traditional equitable principles of unjust enrichment." *Ghirado v. Antonioli,* 14 Cal.4[th] 39, 50, 57 Cal.Rptr. 2d 687 693 (1996). Musings since that decision on the lower appellate level have been largely over semantics. *See McKell v. Washington Mut., Inc.*, 142 Cal.App.4[th] 1457, 1490, 49 cal.Rtpr.3d 227 (2006) ("There is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust.")

21

directly to the ultimate purchaser. *Montich I*, 849 F.Supp.2d at 460-61. As in *Tietsworth v. Sears, Roebuck and Co.,* 720 F.Supp.2d 1123, 1145 (N.D.Cal.2010), Ms. Montich has alleged that sales of Defendant's washing machines were increased by Defendant's failure to disclose the defect. Similarly, in *Shersher v. Superior Court,* a retail purchaser sued Microsoft for consumer fraud claims related to the sale of Microsoft routers and network hardware through retail outlets, and was permitted to seek restitution directly from Microsoft. *Shersher v. Superior Court,* 154 Cal.App.4th 1491, 1500, 65 Cal.Rptr.3d 634 (Cal.Ct.App.2007) ("To confer a benefit, it is not essential that money be paid directly to the recipient by the party seeking restitution."). Ms. Montich in the same relationship with Miele as Shersher had with Microsoft. Defendant ignores this precedent, and strains to interpret *Kossian* in its favor.[9] Indeed, Defendant neglects that one of the cases it relies upon elsewhere, *City of Oakland v. Comcast Corp.*, 2007 WL 518868 * 4 (C.D.Cal. Feb. 14, 2007) states clearly that the "doctrine of unjust enrichment can "in some instances, have validity without privity of relationship. *Id.* (citing *CTC Real Estate Svcs v. Lepe*, 140 Cal.App.4th 856, 860-61, 44 Cal.Rptr.3d 823 (2006)).

   b.  *New Jersey Does Not Require Privity*

  While this Court initially found, in *dicta*, that New Jersey requires privity for a claim of unjust enrichment (*Montich I*, 849 F.Supp.2d at 459), subsequent decisions in this District have conformed with pre-existing New Jersey Supreme Court and Appellate Division decisions which to not require direct privity as an element of an unjust enrichment claim. *See Stewart v. Beam*

---

[9]  As regards the decision from the Ninth Circuit identified by the Court in *Montich I* as precedent that may indicate that privity is required, the relationship was not one between a purchaser and a manufacturer of a consumer good. Rather, in *Doe v. Wal-Mart Stores, Inc.*, 572 F.3d 677 (9th Cir. 2009), employees of some of Wal-Mart's foreign suppliers were held to have too distant a relationship to Wal-Mart to assert a claim of unjust enrichment when Wal-Mart did not enforce its "Standards of Suppliers", including certain labor practices, with the supplier that employed those plaintiffs.

*Global Spirits*, 877 F.Supp.2d 192 (D.N.J. 2012).  In *Stewart*, consumers sued a manufacturer for its deceptive advertisement and sought relief for, *inter alia*, unjust enrichment.  This Court held that a manufacturer who advertises its products to consumers has a sufficiently "direct relationship" with consumers to allow for an unjust enrichment claim, even if the consumer purchases the product from an intermediate retailer.[10]

As a starting point to its analysis, the Court recognized that the law requires "some direct relationship" between the parties in order to assert an unjust enrichment claim.  *Id.* at 198. However, Judge Hillman concluded the "direct relationship" requirement did not create a bright-line test that there must be privity between the plaintiff and defendant.  *Id.* at 199.

> In the Court's view, the recognition that "some direct relationship" should exist between the parties to an unjust enrichment claim simply reflects the need to curtail the reach of this equitable remedy—a so called "legal fiction"—to prevent a finding of liability in cases where the defendant had absolutely no course of dealings with, and no other demonstrated connection to, the plaintiff. The notion that "some direct relationship" exist between the parties is simply meant to preclude a plaintiff from seeking recovery from a defendant whose involvement is too far removed or too attenuated from the facts and circumstances giving rise to the plaintiff's claims.

*Id.* at 200.

---

[10]    In *Stewart*, Judge Hillman recognized that he disagreed with other judges in this District who had held that privity between the plaintiff and defendant was an element of an unjust enrichment claim. *Stewart*, 877 F.Supp.2d at 197. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) requires federal courts to follow the decisions enunciated by the highest court of the state with respect to state law claim.  In reciting the elements of a unjust enrichment claim, the New Jersey Supreme Court has never included privity as one of those elements. *See VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994) (elements of an unjust enrichment claim are that 1) the plaintiff expected remuneration from the defendant at the time it performed or conferred a benefit on the defendant and 2) that the failure of remuneration enriched defendant beyond its contractual rights); *see also Reed v. Carter-Reed Co., LLC*, 203 N.J. 496 (2010)(reversing denial of class certification of unjust enrichment claims against manufacturer of dietary supplement, even though consumers purchased from intermediate retailer).  Plaintiffs respectfully suggest that the reasoning in *Stewart* is more in accordance with the law of unjust enrichment as enunciated by the New Jersey Supreme Court and, in any event, is more persuasive and more in keeping with the equitable principles behind unjust enrichment.

When a manufacturer effectively reaches out to a consumer through deceptive advertising, the Court noted that it would be inequitable to permit it to sit immune from suit for unjust enrichment:

> This Court is of the view that it would be inequitable to suggest that the Beam Defendants can insulate themselves from liability on an unjust enrichment claim simply by asserting that retail sales by liquor stores cut off any relationship between the consumers and the manufacturer. This is particularly true in this case where Plaintiffs cannot seek a remedy directly from the liquor stores based on misrepresentations allegedly made by the Beam Defendants themselves. . . . Accordingly, this Court finds that where a plaintiff alleges that a defendant manufacturer has made false claims or misrepresentations directed for the purpose of generating retail sales, and where those retails sales could have the effect of increasing the amount of wholesale sales to the manufacturer, it is plausible that a plaintiff can show evidence of a sufficiently direct relationship between the parties under New Jersey law.

*Id.*

Based on such basic principles of equity, New Jersey law does not require privity for a suit between Defendant, whose advertising and marketing were deceptive, and Ms. Montich who relied on Defendant's representations when she purchased one of Defendant's machines. Further, both California law and New Jersey law are in accord with generally applicable unjust enrichment law in that no privity between the plaintiff and defendant are required to assert an unjust enrichment claim. Since California and New Jersey law are in accord, there is no need to do a conflict of laws analysis. *See P.V. v. Camp Jaycee*, 197 N.J. 132, 143(2008) (first step in choice-of-law analysis it to determine whether an actual conflict exists. "If not, there is no choice-of-law issue to be resolved.")

### 3.    If a Conflict Exists Between the Laws of New Jersey and California, California Law Should Apply

If the Court finds that New Jersey law requires privity, or is otherwise in conflict with California law, the law of Ms. Montich's state, California, should apply. While Ms. Montich's

money ended up with Defendant in its headquarters in New Jersey, the rest of the relationship between Plaintiff and Defendant, that is her purchase of the washing machine and her use of the washing machine are in California, where Plaintiff lives.  As this Court noted, the conflict of law analysis in this case is under the "most significant relationship" test which, for unjust enrichment claims is governed by Restatement § 221 (*see* Comment (a)). That section states:

> (1)    In actions for restitution, the rights and liabilities of the parties with respect to the particular issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2)    Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a)    the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
>>
>> (b)    the place where the benefit or enrichment was received,
>>
>> (c)    the place where the act conferring the benefit or enrichment was done,
>>
>> (d)    the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>>
>> (e)    the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Moreover, finding that California has the most significant relationship to the unjust enrichment claims is wholly in keeping with the arguments made by Defendant in its initial motion, where it argued for the application of California law because that is where Plaintiff lives, and  where she purchased and uses her washing machine.  Motion by Defendant Miele USA, Inc.

25

to Dismiss Plaintiff's Putative Class Action Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) (D.E. 23-01),  pp. 4-7 (arguing for application of California law to the consumer fraud claims), 9 (arguing that California law applies to Plaintiff's warranty claim). This is particularly significant as the conflict of law analysis for both warranty claims (under Restatement (Second) Conflict of Laws §188) and unjust enrichment (under Restatement (Second) Conflict of Laws § 221) both turn on "the most significant relationship to the occurrence and the parties under the principles stated in § 6."  Under a similar analysis, this Court determined that the consumer laws of California, not New Jersey (as had been originally pled) apply to Ms. Montich's claims against Defendant, and that such a finding was "further bolstered by the factors listed in § 6 of the Restatement."[11]  *Montich I*, 849 F.Supp.2d at 450. The dissonance in Defendant's argument with its prior arguments and the earlier decision by the Court seems best explained by the fact that Defendant's current motion to dismiss Plaintiff's unjust enrichment claims appears to be on better footing under New Jersey law, and not by some idiosyncratic fact that requires that a different law should apply uniquely to Plaintiff's unjust enrichment claims.

---

[11]     The Court applied New Jersey law to Plaintiff's claim of breach of implied warranty because there was no conflict between the laws of California and New Jersey for the purposes of the initial motion to dismiss. *Montich I*, 849 F.Supp.2d at 455.

## CONCLUSION

For all of the foregoing reasons, Plaintiff Daisy Montich requests that the Motion to

Dismiss her Second Amended Complaint be denied.

> CARELLA, BYRNE, CECCHI,
> OLSTEIN, BRODY & AGNELLO, P.C.
> Attorneys for Plaintiffs

Dated: March 18, 2013    By: /s/ James E. Cecchi
           JAMES E. CECCHI

> Jamie E. Weiss
> Julie D. Miller
> COMPLEX LITIGATION GROUP LLC
> 513 Central Ave.
> Suite 300
> Highland Park, IL 60035
>
> Jonathan Shub
> Scott Alan George
> SEEGER WEISS LLC
> 1515 Market St., Suite 1380
> Philadelphia, PA 19102
> (215) 564-2300
>
> Richard J. Burke
> COMPLEX LITIGATION GROUP LLC
> 1010 Market Street
> Suite 650
> St. Louis, MO  63101
> (314) 621-8647