**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**MICHAEL A. SHIPP**
UNITED STATES DISTRICT JUDGE

CLARKSON S. FISHER COURTHOUSE
402 EAST STATE ST., ROOM 7000
TRENTON, NJ 08608
609-989-2009

**Not for Publication**

LETTER OPINION

September 30, 2013

**VIA CM/ECF**
All counsel of record

  Re: **Daisy Montich v. Miele USA, Inc.**
     **Civil Action No. 11-2725 (MAS) (DEA)**

Dear Counsel:

This matter comes before the Court upon the Motion to Dismiss filed by Defendant Miele USA, Inc. ("Defendant"). (Def.'s Mot., ECF No. 59; Def.'s Moving Br., ECF No. 59-1.) Plaintiff Daisy Montich ("Plaintiff") filed opposition to the motion. (Pl.'s Opp'n Br., ECF No. 63.) Defendant filed a reply. (Def.'s Reply Br., ECF No. 64.) The Court has carefully considered the pleadings and has decided the motion without oral argument pursuant to Local Civil Rule 78.1. After careful consideration, and for the reasons set forth below, Defendant's motion is granted.

**I. Background**

On March 27, 2012, the Honorable Freda L. Wolfson, U.S.D.J., issued an Opinion on Defendant's first motion to dismiss. (March 27 Op., ECF No. 29.) The Opinion granted Defendant's motion in part, denied the motion in part, and provided Plaintiff leave to amend. (*Id.*) Plaintiff filed an Amended Complaint. (ECF No. 35.) The Court subsequently granted in part Defendant's motion

to dismiss the amended complaint and again granted Plaintiff leave to amend her complaint. (ECF No. 54.) Plaintiff filed her Second Amended Complaint ("SAC") on January 14, 2013. (ECF No. 56.)

The issues reflected in the present motion directly relate to the Court's previous Opinions. In light of the comprehensive background and extensive analysis contained in the March 27 Opinion, this Letter Opinion will provide an abbreviated discussion.[1]

## II. Discussion

### A. Fraud Claims (Counts I & II)

#### 1. March 27, 2012 and December 19, 2012 Opinions

In the March 27, 2012 Opinion, the Court noted that dismissal is appropriate when a plaintiff's case "is devoid of allegations regarding reliance." (March 27 Op. 20.) The Court stated:

> Here Plaintiff points to her allegations that "Miele intended that Plaintiff and the Class would rely" on Miele's representations and omissions regarding the alleged mildew odor and that without Miele's disclosures "consumers would not know there is a design flaw." Compl, ¶¶ 47, 49. But whether Miele intended Plaintiff to rely or not is irrelevant to whether Plaintiff did in fact so rely. Plaintiff does not allege (1) that she saw any Miele advertisements or representations regarding its front-loading washing machines such that she would have been aware of any relevant disclosures or omissions or (2) that had she been aware of such disclosures, she would have behaved differently. . . .
>
> These deficiencies are even more glaring in light of the heightened pleading standard required by Rule 9(b). While a plaintiff in a fraud by omission suit will not be required to specify the details of an omission as precisely as would a plaintiff asserting a false representation claim, a plaintiff must still plead the essential

---

[1] The law of the case doctrine recognizes that "as a matter of comity a successor judge should not lightly overturn decisions of his predecessors in a given case." *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994). "The law of the case operates only to limit reconsideration of the same issue." *Id.* However, "there may be exceptional circumstances under which the rule is not to be applied." *TCF Film Corp.v. Gourley*, 240 F.2d 711, 714 (3d Cir. 1957). "Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances." *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982). "The purpose of this rule is to preserve the orderly functioning of the judicial process." *Id.* at 168 (internal quotation and citation omitted).

elements in some "alternative way." . . . Without any allegation of reliance, Plaintiff's complaint is lacking "all the essential factual background" necessary to inform the Court of Plaintiff's fraud claim, including *what representations she relied on*, if any, or *where and how those representations were made*, such that Plaintiff could have learned of the defect had Miele not omitted it, and whether Plaintiff would have acted differently had she known about the alleged defect.

(March 27 Op. 20-22) (emphasis added).

In its December 19, 2012 Bench Opinion, the Court found that Plaintiff's amended complaint still did not satisfy Rule 9(b)'s heightened pleading standard. The Court stated:

[P]laintiff's amended complaint still falls short of Rule 9(b)'s heightened pleading standard. As Plaintiff's opposition brief summarizes, the supportive facts are as follows[:] "WHO: Miele. WHAT: misrepresents the qualities of the machines as regards to efficiency and economy. WHERE: in the course of Miele's marketing campaign. WHEN: prior to plaintiffs' [sic] purchase of her machine and continuing thereafter. HOW: by stating that its machines were water and energy efficient and worth the premium price, while the defect renders the machines inefficient and otherwise undesirable." (Pl.'s Opp'n Br. at 7.)

While Plaintiff's alleged facts include general allegations, the Court finds that her factual allegations are still not injected with the precision required to meet the Rule 9(b) heightened pleading standard. The Court finds [D]efendant's reference to *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009), persuasive. In *Kearns*, the Court found the factual allegations insufficient to meet 9(b)'s heightened pleading standard. The factual allegations in [P]laintiff's complaint here are even less than those in *Kearns*.

(Tr. 41:20-42:14, ECF No. 58.)

### 2. Second Amended Complaint

Plaintiff's Second Amended Complaint contains a number of new allegations. Paragraph 10 provides:

As Miele has stated in its American marketing materials since late 2006 or early 2007, which Ms. Montich observed and relied upon, including its website: "more that 14,000 employees of Miele are motivated to produce products that are not only high performing, safe and easy to use, but also made to the highest quality standards and from the best raw materials. These ingredients are critical, for our mission is to create products that customers will enjoy for a lifetime of use with confidence and reliability. At the very core of Miele's technical and production competencies are washing machines. Having more experience than almost any other appliance company on the planet, Miele has taken the washing machine . . . around the world

to the highest level of durability, reliability and convenience while always remembering the product's potential impact on our cherished natural resources. With these factors in mind, Miele creates the ultimate fabric care system that cleans and protects clothing better than any other. Guaranteed."

(SAC ¶ 10.)

Paragraph 12 provides:

As Miele recites on its United States website, and echoed in other marketing materials including those available at the shop floor, since late 2006/early 2007:

"Today, this family owned and operated company continues to innovate to make products that are built to last and made to outperform any other. The revolutionary Honeycomb$^{TM}$ drum represents Miele's latest advancement in at-home fabric care. Among the many benefits in this **quantum leap of technology** include:
Even better washing results
Considerably lower water consumption and
A longer life span of your clothing given its gentle handling of garments."

"Cleaning Performance That Will Make Your Dry Cleaner Envious . . . Over the past 10 decades, Miele has conducted volumes of research in the field of fabric care, but in the United States and in countries all around the world. After sifting through all this data, the key requirement for in-home fabric care are collected in the following categories:
Ultimate cleaning performance
Easy-to-use and maintain
Quality and longevity of product and your clothing
Eco-friendly
Brand you can trust
At the end of it all, the key jobs of a washing machine are to clean and care for your clothing."

"What Does This [the Miele technology] Mean to You and Your Family? . . . there is virtually no chance your clothes will be damaged . . . . An independent study . . . provides that your valuable wardrobe will be cleaner and last up to **four times longer** if cared for in a Miele."

"Environmental Commitment . . . It's OK to be 'Green' . . . Your children's children will thank you . . . . Our research and development teams are constantly striving to improve the performance of our appliances and the manner in which they are manufactured. In so doing, we ensure that raw materials, energy, water and other natural resources are used sparingly. These high standards, set for ourselves . . . allowed Miele to become the first appliance manufacturer in the world to gain certification to the stringent

4

> International Environmental Standard DIN EN ISO 14001. From your household operations standpoint, every Miele washing machine qualifies for the Energy Star Program; supported by local utility companies to help reward owners of high-efficiency appliances. As a matter of fact, Miele has one of the most efficient washing machines on the market, using as little as 7.8 gallons of water per load. Cleaner clothes and lower utility bills – a perfect match for anyone."
>
> The benefits of Miele's "Clean and Sanitize" function which is supposed to recognize that nothing gets "closer to your skin" than your clothes, and is said to eliminate contaminates like "bacteria, fungus spores and viruses."

(SAC ¶ 12.)

Paragraphs 17-18, 20 and 23-28 provide:

> 17. On information and belief, Defendant has received a significant number of complaints regarding performance of the Machines, and in particular, regarding mold and mildew.
>
> 18. The inability of the Miele Washing Machines to properly drain, especially the door seal, is due to a common design defect. Miele knew, or should have known, of the design defect at the time it sold the Machines.
>
> 20. At no time has Miele disclosed the design defect to purchasers of Miele washing machine [sic] or the general public, who would not otherwise know of the defect. On information and belief, Miele actively concealed the existence of the defect, even when purchasers began contacting Miele about the development of mold and mildew in their machines.
>
> 23. On or about July 27, 2007, Plaintiff purchased a Miele Washing Machine for approximately $1,799. Plaintiff used the washer for normal home use.
>
> 24. Plaintiff was unaware of the defect in the Miele Washing Machine before her purchase.
>
> 25. Rather, given Miele's marketing and other materials about the Miele brand and Miele washing machines which she had read and to which she had been exposed prior to her purchase of her Miele washing machine, she expected to purchase a washing machine that saved energy and water while providing outstanding cleaning and dependability, including a long useful life. She did not expect to buy one that would become contaminated with mold and mildew, require that clothes be washed and immediately re-washed, and need to be run empty on occasion to curb, only somewhat, the contamination and smell.
>
> 26. Prior to her purchase, Ms. Montich was familiar with the Miele brand as being synonymous for quality and reliability, an impression based not only on

Miele's marketing, but also on the limited and select distributors Miele chose to use for sales of its products in the United States.

27. Ms. Montich and/or her husband researched the Miele machine. Based on this research, including Miele marketing materials available on the showroom floor and the Miele United States website, Ms. Montich read the statements outlined above (i.e., ¶¶ 10-13) and was lead to believe that Miele was a top-of-the-line manufacturer of reliable appliances and that the Miele machine would conserve water and energy, was eco-friendly, and would protect and ensure a long, useful life for her clothes and the clothes of her family. When she visited a retail showroom, the same messages and statements were echoed by sales staff.

28. Such qualities were material to and played a substantial part in her decision to purchase a Miele washing machine. She paid more for the Miele washing machine expecting that it would meet such expectations, and was unaware of the defect which Miele omitted from these materials and concealed from the public. Indeed, because her husband could be described as an environmentalist and a conservationist, the promised efficiencies were seen by Ms. Montich to justify the premium price of the Miele.

(SAC ¶¶ 17, 20, 23-28.)

### 3. Rule 9(b)'s Heightened Pleading Requirement

While Plaintiff's Second Amended Complaint contains more facts than the previous complaints, the majority of Plaintiff's factual allegations remain general in nature. For example, Plaintiff indicates that she visited a showroom but the Second Amended Complaint did not allege any specific facts regarding the visit. The Second Amended Complaint also mentions marketing materials but does not provide any specifics regarding the marketing materials actually viewed by Plaintiff. While the Second Amended Complaint makes particularized allegations in reference to the specific content of Defendant's website, it appears that the Complaint provides the *present* content of Defendant's website followed by allegations that the representations found in the website were "echoed" in other marketing materials dating back to 2006/2007.

A careful review of Plaintiff's Second Amended Complaint reveals that Plaintiff has still failed to infuse the level of precision necessary to satisfy Rule 9(b). As to the alleged misrepresentations, the Second Amended Complaint only contains the general time frame for the

alleged statements. The Second Amended Complaint also makes general references to "marketing materials," which does not satisfy Rule 9(b)'s particularity requirement. Although the Second Amended Complaint contains specific language from Miele's website, it appears to provide the text found on Miele's *current* website. Notably, the introduction to Paragraph 12 of the Second Amended Complaint provides, "As Miele *recites* on its United States website[.]"

As such, Plaintiff in this case attempts to infuse the Complaint with particularity by referencing specific content of Miele's *current* website followed by general allegations regarding "echoing," a term which in and of itself lacks particularity. Plaintiff's efforts in this regard can be traced through several paragraphs of the Second Amended Complaint. Paragraph 27 of the Second Amended Complaint states, "Ms. Montich read the statements outlined above (*i.e.*, ¶¶ 10-13)." The reference to "¶¶ 10-13" incorporates Paragraph 12. Paragraph 12 includes the language from the website. The introductory phrase to Paragraph 10 of the Complaint states, "As Miele has stated in its American marketing materials since late 2006 or early 2007, which Ms. Montich observed and relied upon, including its website[.]" As such, the Complaint alleges that Ms. Montich observed and relied upon Miele's marketing materials, "including its website," and that the representations on the website played a substantial part of her decision to purchase a Miele washing machine. Significantly, however, Plaintiff does not allege that the website quoted in the Second Amended Complaint is the same website that she actually viewed.

Here, referencing the specific content of Miele's current website alongside generalities does not convert the generalities into particularized allegations sufficient to satisfy Rule 9(b)'s

heightened pleading standard.[2] Moreover, Plaintiff does not indicate which statements played a substantial role in her decision.[3] The Second Amended Complaint is largely devoid of specifics.

As to the alleged omissions, the Court recognized in its March 27, 2012 Opinion that "[w]hile a plaintiff in a fraud by omission suit will not be required to specify the details of an omission as precisely as would a plaintiff asserting a false representation claim, a plaintiff must still plead the essential elements in some 'alternative way.'" (March 27 Op. 22.) Here, Plaintiff failed to adequately do so because she pled the essential elements in too general a fashion. As such, Plaintiff's claims that sound in fraud cannot survive Defendant's motion to dismiss.[4]

### 4. Inference of Scienter

The Second Amended Complaint also does not adequately allege facts which would demonstrate that Miele was aware of the alleged defect at the time Plaintiff purchased her washer.

---

[2] Plaintiff's generalities are reflected by her "echoing" language. The Second Amended Complaint contains no level of detail regarding the content of and facts surrounding the alleged "echoes."

[3] Defendant correctly asserts that not all of the statements that Plaintiff cites in her Complaint are actionable. Indeed, courts routinely find generalized and vague statements of product superiority to constitute non-actionable puffery. Here, the Court observes that many of the statements alleged in the Second Amended Complaint appear to constitute non-actionable puffery, such as the meaning of Plaintiff's trademark in paragraph 9. Other statements appear to be measurable, such as "An independent study . . . proves that your valuable wardrobe will be cleaner and last up to four times longer if cared for in a Miele." The Court, however, need not reach this discussion due to the lack of specificity in Plaintiff's allegations.

[4] The March 27 Opinion also provided: "Under California law, a plaintiff must also show that the defendant had a duty to disclose the omitted fact. Such a duty arises in one of four ways: '(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.'" *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (Cal. Ct. App. 1997). Since the Parties do not address this issue and in light of Plaintiff's failure to sufficiently plead actual reliance, the Court need not address it at this time." (March 27 Op. 22 n.10.) While the Parties have now briefed this issue, the Court again does not reach it and other issues raised in the pleadings in light of Plaintiff's continued failure to satisfy Rule 9(b)'s heightened pleading standard.

In her opinion brief, Plaintiff referenced *Oestreicher v. Alienware Corporation*, a case cited by Defendant in its moving brief. The *Oestreicher* Court stated:

> [A] plaintiff seeking to state a claim for fraud must also plead knowledge of falsity, or scienter. The requirement for pleading scienter *is less rigorous than that which applies to allegations regarding the "circumstances that constitute fraud"* because Rule 9(b) states that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Nonetheless, nothing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to "set forth facts from which an inference of scienter could be drawn."

(Pl.'s Opp'n Br. 10) (citing *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008) (emphasis added by Plaintiff). Plaintiff also cited *Cooper v. Pickett* and *GlenFed*, cases relied on by the *Oestreicher* Court, for the proposition that Plaintiff may allege knowledge generally. (Pl.'s Opp'n Br. 10-11.)

In *GlenFed*, a securities fraud case, the *Court* stated:

> Rule 9(b) does not require that the complaint set forth facts giving rise to an inference of scienter, nor that it furnish a detailed exegesis of how the defendants came by the knowledge of those facts which belie their statements. Rule 9(b) requires only that the circumstances constituting fraud-except, of course, for scienter-be set forth with particularity.

*In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1554 (9th Cir. 1994).

In its decision, the *GlenFed* Court discussed the complicated nature of many securities fraud cases. 42 F.3d at 1548-49. Notably, the Court "*reluctantly conclude[d]*" that the complaint "*marginal[ly]*" satisfied Rule 9(b) where plaintiffs: (1) pointed to an alleged materially misleading statement made on September 30, 1990; (2) contrasted the September 30, 1990 statement with specific contemporary statements made at board meetings; and (3) referenced a position paper. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d at 1549-50 (emphasis added).

In *Cooper*, another securities fraud case, the plaintiffs alleged:

> [b]ecause of their . . . positions as securities analysts employed by [the company's] investment banker, . . . each of the defendants (a) knew or had access to the material, adverse non-public information about [the company's] adverse financial outlook and

9

> then existing business conditions which was not disclosed; and (b) drafted, reviewed and/or approved the misleading statements, releases, reports and other public representations of and about [the company].

*Cooper v. Pickett*, 137 F.3d 616, 627-28 (9th Cir. 1998). The *Cooper* Court found that the facts, as alleged, gave rise to the inference that the analysts knew their reports were false. *Id.* at 628.

While the facts of the securities fraud cases are distinguishable from the facts of the present case, Defendant persuasively cited a number of analogous cases in support of its assertion that Plaintiff did not adequately allege scienter. For example, the *Oestreicher* Court held that "[r]andom anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants. There are no allegations that [the defendant] knew of the customer complaints at the time plaintiff bought his computer." *Oestreicher*, 544 F. Supp. 2d at 975 n.9.

Plaintiff asserts that the Second Amended Complaint contains specific substantive allegations. According to Plaintiff:

> Ms. Montich states that Defendant received complaints about, "in particular, problems regarding mold and mildew" and, additionally, had greater knowledge about the underlying design, and design infirmities, of the machines. SAC ¶¶ 17, 18. Such allegation[s] "suggest the required element" in satisfaction of Rule 8.

(Pl.'s Opp'n Br. 12.)

However, Plaintiff pled certain allegations "on information and belief." (SAC ¶ 17.) In addition, Plaintiff did not allege that Miele knew of the customer complaints at the time Plaintiff purchased her washer. Additionally, Plaintiff alleged that "Miele knew *or should have known* of the design defect at the time it sold the Machines." (SAC ¶ 18) (emphasis added). Plaintiff did not adequately plead scienter.

### B. Unjust Enrichment Claim (Count IV)

As set forth in its December 19, 2012 bench decision, since Plaintiff's allegations are grounded in fraud, her unjust enrichment claim must also be pled with particularity. Therefore, Plaintiff's unjust enrichment claim again fails for the reasons set forth above. The Court need not reach the other arguments.

### C. Plaintiff's Request for Leave to Amend

Plaintiff asserts:

> If Defendant's Motion is granted in whole or in part, Plaintiff should be "freely given" the opportunity to amend so that she is "afforded an opportunity to test [her] claims on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962); see also *Minard v. Iazzetti*, 2007 WL 4208836 (D.N.J. Nov. 26, 2007) (permitting Third Amended Complaint). Defendant is not challenging the adequacy of Ms. Montich's verbatim recitation of Defendant's statements on its website. The adequacy of the pleading of the actionable statements by Defendant is the only matter that has been determined by the Court to date. The remaining matters at issue in the pending Motion are either unique to the present Motion or argued, but not decided, in prior briefing.

(Pl.'s Opp'n Br. 6 n.2.)

The Court reluctantly grants Plaintiff leave to amend. The Court's previous Opinions set forth the nature of the deficiencies in the complaints, which the Second Amended Complaint still failed to adequately address. Nevertheless, the Court will provide Plaintiff another opportunity to amend the Complaint. Counsel should be aware that although the Court did not need to reach all of the arguments raised in the briefs in its decisions, the Court will not be inclined to grant any further leave to amend, even if it reaches certain issues for the first time in its next decision. The Third Amended Complaint should be drafted accordingly.

## III. Conclusion

For the reasons set forth above, and as reflected by the accompanying Order, Defendant's motion is granted. Plaintiff shall file her Third Amended Complaint by **October 18, 2013**.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**
